**UNITED STATES, Appellee,**

v.

**Carlton E. WILLIAMSON, Staff Sergeant, U.S. Army, Appellant.**

**No. 54,481.**
**CM 445698.**

U.S. Court of Military Appeals.

April 20, 1987.

For Appellant: *Colonel Brooks B. La-Grua, Lieutenant Colonel Paul J. Luedtke, Major Eric T. Franzen, Captain Annamary Sullivan* (on pleadings); *Captain Scott A. Hancock.*

For Appellee: *Colonel James Kucera, Lieutenant Colonel Adrian J. Gravelle, Lieutenant Colonel Gary F. Roberson, Captain Michael W. Hoadley* (on pleadings).

*Opinion of the Court*

COX, Judge:

Contrary to his pleas, appellant was convicted by a general court-martial composed of officer and enlisted members of rape, in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920. His sentence to confinement for 10 years, partial forfeitures, reduction to E–1, and a dishonorable discharge was approved by the convening authority. The Court of Military Review affirmed in an unpublished opinion.

This Court granted review to consider whether the military judge erred in admitting, over defense objection, testimony by a police officer regarding the general advice given to women who are subjects of a sexual assault. 22 M.J. 381. Agreeing with appellant that this testimony was irrelevant, but finding no substantial prejudice, we affirm. Art. 59(a), UCMJ, 10 U.S.C. § 859(a).

The prosecutrix, Mrs. Regina K., testified through an interpreter as follows: On January 28, 1984, while she was walking near her home in Bobingen, Federal Republic of Germany, she encountered appellant, a stranger to her. He jogged up, "opened his fly," and started walking with her. Although she was "scared to death," she made an effort to appear calm. He tried to engage her in small talk, speaking English and "a little bit" of German. After a few minutes, he grabbed her, pressed his body against hers, and stated, "come on, come on." She put her hands against his chest and "told him no, no, because [she] couldn't think of ... [anything] else and ... [she did not know] that much English and ... he didn't understand ... [her], and a lot of thoughts went through ... [her] mind, ... like ... who's going to help me, nobody was there." She further testified:

> [H]e was stronger than I was and I didn't know how he was going to react. I didn't know him, his character, if he was going to close with his hand in my mouth or—or what ... I tried to make fun out of the situation and just told him I'm too old for you, and then he—he only said come on, come on, and pushed me over to the side, ... forced me to my knees so I would fall on my back.

After he had forced her to the snow-covered ground, he pulled her panty hose down to her knees and had sexual intercourse with her. She did not consent to intercourse with him, but she offered no further resistance because they were in a deserted rural area, appellant possessed superior strength, and she was afraid that he would kill her. As soon as she arrived home, she called the police to report the incident.

Mr. Carl Daiver, a German police officer, testified that on January 30 he interviewed appellant concerning the offense. Appellant initially denied being in the area during "that critical time frame," but later stated that he had "met a German fraulein in Böbingen" and engaged in consensual sexual intercourse with her.

In his own defense, appellant gave an account which differed significantly from that of the prosecutrix. He testified that: Mrs. K. walked along with him willingly, allowing him to hold her hand and then to place his arm around her waist. Suddenly, she stopped walking and said, "is here is good." Then "she laid down on the ground of her own will, ... pulled up her dress," lowered her panty hose and panties, and offered herself to him. They proceeded to engage in consensual sexual intercourse in an open field in the snow.

Over defense objection, trial counsel was permitted to elicit from the police officer his advice to potential victims of sexual assaults, as follows:

Q. ... Herr Daiver, you have, as a police officer, have you been involved in and are you familiar with—familiar with information that the German police give out to the public, public relations, things of that type to the public?

A. I only can state the things from my own experience.

Q. Could you also state it from things that you have observed that are told to people on German television for example, and in the newspapers?

A. It is very difficult to give a general advice to every situation or case that happens.

Q. What is the advice given to women who are the subjects of sexual assaults—

DC: Objection, Your Honor.

MJ: Basis?

DC: A—relevance.

MJ: Overruled.

[TC] Q. What is the advice that you give women who are subject, or who are possible subjects to sexual assaults in areas that are deserted and with no other persons present?

A. I would give the female the advice if she comes to a situation where there's no escape, that the best bet for her is just not to resist.

■ Appellant admitted having sexual intercourse with the prosecutrix, so the only genuine issue in the case was whether the act of intercourse occurred by force and without consent. Force and lack of consent are indispensable to the offense of rape. Art. 120(a). "If a woman in possession of her mental and physical faculties fails to make her lack of consent reasonably manifest by taking such measures of resistance as are called for by the circumstances, the inference may be drawn that she did in fact consent." Para. 199a, Manual for Courts-Martial, United States, 1969 (Revised edition). Resistance is not required, however, when it would be futile; the *totality* of the circumstances, including the level of resistance, are to be considered by the factfinders in determining whether consent was lacking. *United States v. Henderson*, 4 U.S.C.M.A. 268, 273, 15 C.M.R. 268, 273 (1954).

■ Trial counsel sought to use the testimony of the police officer to bolster the victim's testimony regarding her decision not to resist more extensively. As correctly perceived by defense counsel, however, the police officer's testimony about what he would advise women in general provided no enlightenment to the court members as to the questions in issue—whether Mrs. K. failed to reasonably manifest her lack of consent or, in fact, consented to sexual intercourse. There was no evidence to link the conduct of Mrs. K. with the advice. For instance, there was no evidence that she had been so advised by this police officer or others, or that she relied on such advice when she decided that further resistance would be unwise. The testimony of the police officer as to his hypothetical advice to women was thus irrelevant and did not have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Mil.R.Evid. 401, Manual, *supra*. However, Mrs. K's explanation of why she did not offer further resistance happens to be virtually identical to the tenor of the police officer's advice. Therefore, the officer's testimony in this respect added nothing to the evidence.

■ Evidence to explain why a woman did not resist sexual advances can cut both ways. It can support a prosecution theory that resistance was futile, thus rebutting an inference of consent. Para. 199a, Manual, *supra*. On the other hand, it can support a defense theory that consent was inferable or that the accused was reasonably mistaken in believing that the prosecutrix consented. *United States v. Carr*, 18 M.J. 297 (C.M.A.1984); *United States v. Moore*, 15 M.J. 354, 374 (C.M.A.1983) (Everett, C.J., dissenting). Here, the absence of strong resistance was easily explainable based on the situation in which Mrs. K. found herself. After a careful examination of the record, we are convinced that appellant was not substantially prejudiced by the military judge's ruling to admit the challenged testimony of the German police officer in this case. Art. 59(a).

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge EVERETT and Judge SULLIVAN concur.