UNITED STATES, Appellee,

v.

Staff Sergeant Jose V. RIVERA-CIN-
TRON, 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, United States
Army, Appellant.

ACMR 8801789.

U.S. Army Court of Military Review.

30 Oct. 1989.

For Appellant: Lieutenant Colonel Russell S. Estey, JAGC, Captain Alan M. Boyd, JAGC (on brief).

For Appellee: Lieutenant Colonel Gary F. Roberson, JAGC, Major Kathryn F. Forrester, JAGC, Captain George R. Johnson, JAGC (on brief).

Before MYERS, JOHNSON and NEURAUTER, Appellate Military Judges.

## OPINION OF THE COURT

JOHNSON, Judge:

Contrary to his plea of not guilty, the appellant was convicted by a general court-martial consisting of officer and enlisted members of wrongful distribution of cocaine in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a (Supp. IV 1986) [hereinafter UCMJ]. Appellant's sentence as approved included a dishonorable discharge, confinement for two years, and reduction to Private E1.

Appellant contends that the military judge erred to his substantial prejudice by admitting into evidence over defense objection a plastic bag containing a white powdery substance and a one-page report with entries noting that a field test analysis of an "off-white powder substance" indicated the presence of cocaine. Appellant also contends that the evidence is insufficient to support a finding of guilty in this case. Lastly, appellant personally asserts that the convening authority's action on his case was improper. We find no merit in these contentions.

## I

### ADMISSIBILITY OF THE COCAINE

The charge of which appellant stands convicted arose from the sale of .461 grams of cocaine under circumstances commonly referred to as a "controlled buy." This operation involved three members of the Fort Riley Drug Suppression Team (DST) and a "registered source," Private (PVT) B., who was acquainted with the appellant. PVT B. contacted appellant and arranged to purchase drugs from him. Appellant agreed to meet PVT B. at certain phone booths located near a dining facility on post at about 1300 hours, 8 December 1987. Prior to leaving the DST office for the rendezvous, Military Police Investigator (MPI) Bravo, who was responsible for the operation, strip-searched PVT B. to ensure that the latter had no drugs or money on his person. MPI Bravo also provided PVT B. with marked currency for the anticipated purchase, and then drove PVT B. to a point near the dining facility. Private B. left the DST vehicle, met appellant, walked with him a short distance, and then entered an automobile which appellant drove a few blocks before stopping. PVT B. gave the money to appellant and received in return a plastic bag containing cocaine. The appellant then drove back to the vicinity of the dining facility, and let PVT B. out of the car. PVT B. returned on foot to the DST vehicle where, once inside, he handed the packet of cocaine to MPI Bravo.

A second member of the DST, Special Agent (SA) F., had kept PVT B. under observation from the time PVT B. got out of the DST vehicle until the time he returned to it. SA F. had followed PVT B. on foot, witnessed his meeting with appellant and their walk to appellant's automobile, observed their entry into the automobile, their short drive and stop, and their subsequent return. SA F. continued to watch PVT B. until PVT B. had reentered the waiting DST vehicle. SA D., the third member of the DST, saw PVT B. exit the DST vehicle and his later return but did not keep him under constant surveillance as did SA F. Thereafter, the three DST members together with PVT B. returned to the DST office. MPI Bravo, who had retained possession of the packet of cocaine, conducted a field test on the contents which produced a positive reading for cocaine. The packet and its contents were then handed to the evidence custodian who later mailed them to the laboratory at Fort Gillem for testing. The lab subsequently confirmed that the substance in the packet was cocaine.

In support of his contention that the trial judge erred in admitting the plastic bag containing a "white powdery substance" into evidence, appellant asserts that the government failed to meet its burden to show that the fungible evidence contained in the plastic bag had been preserved in an unaltered state. Appellant appears to rely primarily on the testimony of PVT B. to the effect that the plastic bag he received from appellant contained a substance in "rock

form" having a yellowish tint; the inference being that, if true, the "white powdery substance" of the proffered prosecution exhibit was unexplained and the exhibit should not therefore have been admitted into evidence.

The record is unclear as to the exact appearance of the contents of the plastic bag when received by PVT B. Although PVT B. initially testified that it was in a "rock form," that is, in a solid or crystaline state, further questioning by the military judge as to its appearance elicited the following responses:

WIT: To the best of my knowledge—I mean, it's been a long time. But I generally, personally, did not purchase a white powder like that. It would like [sic] a yellowish tint of cocaine. Okay? It would have been a rock. It could have been crushed, but the color is not the same.

MJ: So you're saying two things—that the substance itself was in a different form, in that it was in a large piece as opposed to a powder and it was a different color or can you remember?

WIT: Well, this is what I'm saying. I can't remember me buying an [sic] white substance. It would have been to a yellowish tint.

MJ: The rock substance?

WIT: Yes.

MPI Bravo also testified that what he received from PVT B. was in a "rock form—that would be the easiest way to say it—with some powder residue." By way of impeachment, appellant's civilian defense counsel inquired of MPI Bravo whether he had testified at the Article 32, UCMJ, 10 U.S.C. § 832, investigation in this case to the effect that PVT B. had given him a plastic bag containing approximately half a gram of a white powdered substance. MPI Bravo could not recall the exact wording of his statement at the investigation, nor could he explain the difference in his two statements. MPI Bravo was also unable to explain why, when he conducted the field test on the substance, he described the item tested as a "plastic ziplock baggie contain-

ing an off white powder substance" in his report.

This confusion over the physical appearance of the cocaine received by PVT B. from appellant caused appellant's civilian defense counsel to object to the introduction of the bag containing cocaine and the report of the field test results. This colloquy between civilian defense counsel and the military judge followed:

CDC: Our objections [to the exhibits] are foundational in nature, not to the chain of custody, *per se.* I would even admit that [trial counsel] has made that chain of custody.

\* \* \* \* \* \*

... our objection is to the fact whether or not there has been a properly layed [sic] foundation for the admission of that evidence. I probably would say that realistically that might be a weight more than admissibility question.

The military judge replied, "I consider that we're talking about a weight question as opposed to an admissibility question. I'm going to allow both."

■ Failure to object to evidence on grounds of lack of authentication or of identification waives the objection. Manual for Courts–Martial, United States, 1984, Mil.R.Evid. 901(a) analysis, app. 22, at A22–55. Similarly, "[f]ailure to make a timely and sufficiently specific objection may waive the objection for purposes of both trial and appeal." Mil.R.Evid. 103(a) analysis, app. 22, at A22–2. In view of civilian defense counsel's withdrawal of any objection as to admissibility of the evidence at trial, counsel's disinclination to raise further any chain of custody question by calling for such persons as the laboratory technician or the evidence custodian, and his final argument which urged the panel to find reasonable doubt based on mistake as to the identity of the cocaine, we find that appellant has waived this issue.

■ Assuming *arguendo* that waiver is inapplicable in this case, we further find that appellant was not substantially prejudiced so as to require reversal of the con-

viction. A careful reading of the record convinces us that there was substantial evidence before the court identifying the substance sold by appellant as cocaine, regardless of its outward appearance. PVT B., whose testimony evinces considerable familiarity with cocaine and its physical properties, indicated no uncertainty at all that what he had purchased from appellant was cocaine. PVT B. handed the packet to MPI Bravo, whose subsequent field test of the substance inside the packet confirmed that it was indeed cocaine. It is well established that the identity of a drug may be proven by the testimony of a witness who, though not an expert in the technical sense, has established a familiarity with the substance. *United States v. Evans*, 16 M.J. 951 (A.F.C.M.R.1983).

## II

### SUFFICIENCY OF THE EVIDENCE

As to his second contention, insufficient evidence to support a finding of guilty, appellant attacks the lack of corroborating evidence, procedural shortcomings in the handling of the controlled buy by the DST members, PVT B.'s credibility, and unresolved conflicts in the evidence of record. Although we find appellant's assertions to be without merit, one conflict in the evidence warrants further discussion.

■ Two members of the DST testified that the individual PVT B. met at the phone booths was wearing a duty uniform described as cooks' whites, a uniform appellant allegedly would not have been wearing in a duty situation since he was a supply sergeant whose dress was the battle dress uniform (BDU). PVT B. testified that he could not remember what appellant was wearing the day of the drug transaction. In contrast to this somewhat perplexing testimony, however, is the positive and unequivocal identification of appellant as the soldier who transacted the sale with PVT B. by the two eyewitnesses closest in proximity to the rendezvous—PVT B., who had had previous dealings and social contacts with appellant, and SA F., who had observed the meeting at close range. The other two DST members were not near

enough to attempt to identify the individual who met with PVT B. Further, appellant candidly admits that he was placed at the crime scene by eyewitness identification. Thus, we find this inconsistency to be immaterial.

■ That we have a duty to determine not only the legal sufficiency of the evidence in cases before this court but also its factual sufficiency is well established. UCMJ art. 66(c), 10 U.S.C. § 866(c). The test for factual sufficiency is whether, after weighing the evidence in the record of trial and making allowances for not personally having observed the witnesses, we are convinced of the accused's guilt beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324 (C.M.A.1987). In view of that standard, after careful consideration of of the evidence of record, we are convinced of the appellant's guilt beyond a reasonable doubt.

## III

### FORMER COURT MEMBER AS CONVENING AUTHORITY

■ Finally, appellant personally asserts that Colonel (COL) A., who had been detailed on court martial convening orders at the time the initial Article 39(a), UCMJ, 10 U.S.C. § 839(a), session was held but who was relieved of that responsibility before appellant's case in chief was convened some weeks later, "had other than an official interest in signing the action as acting convening authority and approving the sentence against appellant." Despite COL A. being initially detailed to appellant's court-martial at the time the Article 39(a), UCMJ, session convened to dispose of motions and to set a date for the trial in chief, there is no evidence in the record that he participated in the case in any way at that time. By an amended convening order, he was relieved of any further court-martial responsibilities some eight days prior to the convening of the case in chief. At the time of the staff judge advocate's post-trial recommendations, COL A. was serving as the acting commander of Fort Riley. As such, COL A. approved the appellant's sentence,

following the advice of the staff judge advocate. Appellant offers no support for his allegation, and we find that the record does not demonstrate that COL A. had anything but an official interest in approving appellant's sentence and ordering it executed. Accordingly, we conclude that COL A. was not disqualified from taking action under Article 60, UCMJ, 10 U.S.C. § 860. *See United States v. Fernandez*, 24 M.J. 77, 79 (C.M.A.1987); *United States v. Conn*, 6 M.J. 351, 354–55 (C.M.A.1979).

The findings of guilty and the sentence are affirmed.

Senior Judge MYERS and Judge NEURAUTER concur.