**UNITED STATES, Appellee,**

v.

**First Lieutenant Melvin L. DORSEY, 438–11–2747, United States Army, Appellant.**

**ACMR 8802148.**

U.S. Army Court of Military Review.

29 June 1990.

---

for appellant: Captain Timothy P. Riley, JAGC, Colonel John T. Edwards, JAGC (on brief).

for appellee: Colonel Alfred F. Arquilla, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Captain Clay E. Donnigan, JAGC (on brief).

Before MYERS, SMITH and NEURAUTER, Appellate Military Judges.

## OPINION OF THE COURT

MYERS, Senior Judge:

Tried by general court-martial composed of members, appellant was convicted of one specification of rape and one specification of kidnapping in violation of Articles 120 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920 and 934 (1982) [hereinafter UCMJ].[1] His sentence, approved by the convening authority, included a dismissal, confinement for twenty-five years, and forfeiture of $1,500.00 pay per month for 300 months. Appellant contends on appeal that the evidence was insufficient to convict him of kidnapping and that his trial defense counsel, Mr. B, a civilian attorney, was ineffective in the presentencing and post-trial phases of the proceedings.

## I.  SUFFICIENCY OF THE EVIDENCE

The standard for reviewing the sufficiency of the evidence has been clearly set forth by the Court of Military Appeals:

> The test for [legal sufficiency] is whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). For factual sufficiency, the test is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, the members of the Court of Military Review are themselves convinced of the accused's guilt beyond a reasonable doubt.

*United States v. Turner,* 25 M.J. 324, 325 (C.M.A.1987); *United States v. Rivera–Cintron,* 29 M.J. 757, 760 (A.C.M.R.1989). Utilizing this standard, we find the evidence of record to be both legally and factually sufficient to sustain the findings of guilty of kidnapping.

## II.  INEFFECTIVE ASSISTANCE OF COUNSEL

Following findings, the prosecution presented testimony that appellant was a poor officer whose duty performance was below average, who was deficient in leader-

---

1. Appellant was also charged with and pleaded guilty to adultery in violation of Article 134, UCMJ, which arose out of the same act of intercourse as the subject of the rape. The resultant finding of guilty was set aside and the charge dismissed by the military judge after the court found appellant guilty of rape.

ship ability, who was moved from company to company and who "basically had a very tough time holding a job, and doing anything other than just [sic] present for duty." Appellant was further described as the worst lieutenant in the battalion. For the defense, the only evidence presented was the testimony of Mrs. Dorsey, who testified that she and the appellant had been married for three years, that they had a nineteen-month-old daughter, that appellant was a great husband and father, that appellant did not kidnap or rape the victim, and that their daughter needs a father growing up. Mr. B's argument on sentencing extended to twenty-two lines in the record.[2] The record of trial was duly served on Mr. B who waived submission of post-trial matters.

In an affidavit admitted as Defense Appellate Exhibit A, appellant alleges that:

a. Individual defense counsel, Mr. B, never discussed sentencing with him and that if he had, appellant could have given him the names of eight individuals as favorable character witnesses;

b. That Mr. B offered no documents on appellant's behalf in extenuation and mitigation, and for that purpose appellant could have provided two letters of appreciation, certificates of appreciation from German authorities for excellence in a shooting competition and for leading his platoon on a twenty-five mile road march, and a German ARTEP[3] certificate.

c. Mr. B. neither prepared a post-trial clemency submission nor assisted appellant in preparing one. Although appellant requested Mr. B's assistance, Mr. B told appellant that the convening authority would merely "rubber stamp" the court-martial results and therefore Mr. B did not intend to submit anything. Appellant called Mr. B in Germany from Fort Leavenworth to inquire into the status of the post-trial submissions and when Mr. B advised that he did not intend to submit any, appellant prepared a brief letter of his own to the convening authority requesting clemency.

Mr. B submitted a lengthy rebuttal affidavit, admitted as Government Appellate Exhibit 1, wherein he asserted, *inter alia:*

a. After receiving a copy of appellant's affidavit, Mr. B attempted to locate the eight individuals named by appellant. Five had departed the command, one was unknown in the command, and two stated that they would not give favorable testimony for appellant.

b. Mr. B and appellant agreed before trial that appellant's military records would "adequately cover [appellant's] military career," and that appellant's letters and German certificates "were so incidental that they would not impress the jury" and would, in fact, make them "look ridiculous putting in such minor matters."

c. Immediately after trial appellant asked Mr. B whether it would do any good to present matters to the convening authority. Mr. B "opined in the negative, ... bas[ing] his opinion upon twenty-five years of specializing and teaching military jus-

**2.** Mr. President and members of the court, a case like the Dorsey case might instruct not only spectators, people on post, and anyone who would read this record of trial, and there is a good chance that this will be typed verbatim. And that is, this court took an oath to do the best they could with the evidence before them. As Lieutenant Dorsey's attorney, Lieutenant Dorsey respects your decision, your integrity, and your good faith. But anyone who has listened to the evidence and who reads this record knows that all the court can do is their very best. They don't have the crystal ball, they don't have the magic to be able to figure out the absolute truth. They can do their best. And if there is ever a case where any human being can listen to this evidence, that even if you are convinced, as you were, beyond a reasonable doubt, from the other evidence as a human factor there must be some doubt. The nature of the evidence raises it. And that is not to criticize the verdict. It is a reality of the jury system. And if there's ever a time to take that doubt, whatever the doubt is, into consideration it's now when you deliberate on an appropriate sentence. And we ask you to do that. Thank you.

**3.** ARTEP stands for Army Training and Evaluation Program. Each ARTEP is composed of a series of outlines, each of which specifies the mission, training objectives, support requirements, and training and evaluation standards of every Army unit. Army Reg. 310–25, Dictionary of United States Army Terms, para. 10 (15 Oct. 1983).

tice." Mr. B told appellant that he would do so if appellant wanted him to, but the latter declined. Mr. B subsequently visited appellant in the Mannheim stockade but appellant did not request any post-trial submissions.

d. Mr. B denied telling appellant in the telephone call from Fort Leavenworth that he refused to submit anything.

█ It is by now axiomatic that where an accused is entitled to the assistance of counsel, that means the *effective* assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Scott*, 24 M.J. 186 (C.M.A.1987) (*Strickland* standards applicable to trials by courts-martial). Such effective assistance extends not only to the trial on the merits, but to the sentencing, post-trial and appellate phases as well. *Strickland v. Washington*, 466 U.S. at 668, 104 S.Ct. at 2052; *United States v. Jefferson*, 13 M.J. 1 (C.M.A.1982) (accused is entitled to competent assistance of counsel throughout the trial); *United States v. Rivas*, 3 M.J. 282 (C.M.A.1977) (defense counsel must act as diligent and conscientious advocate throughout the trial); *United States v. Palenius*, 2 M.J. 86 (C.M.A.1977) (trial defense counsel should act on accused's behalf during post-trial proceedings until appellate counsel commence representation).

The Court in *Strickland* established a two-part standard for determining counsel effectiveness:

a. Defendant must show that counsel's performance was deficient, that is, that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment.

b. Defendant must show that such errors prejudiced the defense to the extent that they deprived the defendant of a fair trial.

*Id.*, 466 U.S. at 687, 104 S.Ct. at 2064. The standard for evaluating counsel performance is that of reasonably effective assistance, an objective standard to be measured "under prevailing professional norms." *Id.* at 688, 104 S.Ct. at 2065. Further, "coun-sel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690, 104 S.Ct. at 2066.

A court-martial at the trial level is a three-part whole: trial on the merits, presentencing proceedings, and post-trial submissions to the convening authority prior to the latter's action. All three parts are essential in their own right and a defense counsel may not concentrate on just one part and ignore the others.

> In our adversary system, it is the affirmative duty of defense counsel to present matters in extenuation and mitigation, to thoroughly advise the accused as to his allocution rights, and to argue for an appropriate sentence, in order to assist the court in reaching a sentence that is just. The purposeful refusal to present such evidence when it exists and is available for no sound tactical reason casts the accused in a very unfavorable light.... 'The defense attorney should recognize that the sentencing stage is the time at which for many defendants the most important service of the entire proceeding can be performed.' *United States v. Green*, 680 F.2d 183, 188 (D.C. Cir.1982).

*United States v. Sadler*, 16 M.J. 982, 983 (A.C.M.R.1983).

A unique feature of the UCMJ is the opportunity it provides to persons convicted thereunder to submit matters on their own behalf to the convening authority. UCMJ art. 60, 10 U.S.C. § 860; Manual for Courts–Martial, United States, 1984, Rules for Courts–Martial 1105, 1106. Again, this is a highly important phase of the proceedings that may not be taken lightly.

> [T]he post-trial review and the action of the convening authority together represent an integral first step in an accused's climb up the appellate ladder. This step is oftentimes the most critical of all for an accused because of the convening authority's broad powers which are not enjoyed by boards of review or even by this Court. *It is while the case is at the convening authority level that the ac-*

*cused stands the greatest chance of being relieved from the consequences of a harsh finding or a severe sentence.*
United States v. Wilson, 26 C.M.R. 3, 6 (C.M.A.1958)(emphasis added). *See also* United States v. Polk, 27 M.J. 812 (A.C.M. R.1988) (defense counsel's post-trial duties carry significant responsibility because the convening authority is accused's most likely source of clemency); *United States v. Zapata,* 12 M.J. 689 (N.M.C.M.R.1981)(it was incumbent upon defense counsel to vigorously and loyally represent accused during post-trial phase of the proceedings).

Quite apart from the constitutional requirement of the effective assistance of counsel, an attorney has the professional duty competently to represent the client. Rule 1.1 of the Rules of Professional Conduct for Lawyers, Department of the Army Pamphlet 27–26, December 1987, applicable to all lawyers practicing before Army courts-martial, provides:

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation.

In the Comment following this rule, the Pamphlet goes on to explain:

Competent handling of a particular matter includes inquiry into and analysis of the factual and legal elements of the problem, and use of methods and procedures meeting the standards of competent practitioners. *It also includes adequate preparation.*

*Id.* at 4 (emphasis added).

■ Having established that appellant was entitled to the effective assistance of his counsel during all phases of the court-martial and that Mr. B had a professional duty to provide competent representation, we now examine Mr. B's representation in this case. At the outset, we are not unmindful of, and do not question, the wisdom of the Court of Military Appeals' admonition in *United States v. DiCupe,* 21 M.J. 440, 442 (C.M.A.1986):

Review of a defense counsel's trial strategy is difficult, if not impossible, on appeal because the appellate court is not privy to the knowledge of the trial participants except to the extent such information appears in the record of trial.

Nevertheless, we are obliged to review Mr. B's trial representation of appellant, applying the standards discussed above.

Mr. B capably represented appellant during the trial on the merits and appellant properly has no complaint about that phase. However, it seemed that after appellant was found guilty as charged, Mr. B either was not prepared or simply did not bother to present any meaningful presentencing evidence. The prosecution evidence was extremely damaging to appellant in characterizing him, *inter alia,* as "the worst lieutenant in the battalion." Mr. B's sole response, the essentially meaningless testimony of appellant's wife, was insufficient in a case where the appellant had just been convicted of two serious felonies and was facing a possible sentence of confinement for life. Further, Mr. B sought out appellant's character witnesses long after the trial, after most of them had already been transferred, instead of seeking them out before trial as he should have. *United States v. Scott,* 24 M.J. at 188 (counsel has a duty to make reasonable investigation or to make a reasonable decision that investigation is not necessary). It should not require an attorney of extreme competence or vast experience to realize that when representing an officer who is facing life in prison and who is not highly regarded by his associates, some extra effort may be necessary to prepare a credible case in extenuation and mitigation. Of course the prosecution may offer evidence in rebuttal, but under the circumstances of this case, that possibility did not excuse Mr. B's utter failure to present a meaningful presentencing case. The very damaging evidence against appellant was uncontroverted by Mr. B, thus allowing the court members to conclude that appellant was a failure as an officer with no redeeming qualities whatever. Mr. B scornfully dismissed the letters of commendation and appreciation and the ARTEP commendation as "such minor matters" as to make the defense "look ridiculous," but at least

those documents were *something* favorable to appellant and, being better than nothing, should have been submitted to the court. Had Mr. B presented to the court something favorable to the appellant, Mr. B may then have had the basis for a forceful and effective argument for a minimum sentence, rather than a mere oblique reference to some hoped-for residual doubt the court may have entertained from the case in chief.

Even were we to hold that Mr. B's representation during presentencing met minimum professional standards, there was nothing to prevent his submitting clemency matters to the convening authority. These submissions may come from anyone in virtually any form, carry little risk of rebuttal, and are, in effect, a gratuitous recourse available to a convicted accused. "This duty [post-trial submissions] carries significant responsibility because the convening authority is the most likely source of clemency." *Polk*, at 814. Mr. B's cynical assertion that, based on his "twenty-five years of specializing and teaching military justice," it would have been useless to petition the convening authority, is unacceptable. Mr. B might be pleasantly surprised were he to submit a well-considered and well-prepared clemency package to a convening authority. The number of cases in which clemency has been denied in the past is immaterial. The point is that the convening authority alone has the authority to grant clemency, and an accused has much to gain and nothing at all to lose by asking the convening authority to exercise that discretion.

We have carefully considered appellant's personal assertion of error pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), and find it to be without merit.

The findings of guilty are correct in law and in fact and the same are hereby affirmed. However, we hold that Mr. B's assistance to appellant in the presentencing and post-trial phases of the proceedings herein was ineffective and, in view of the severity of the sentence, appellant may have been prejudiced thereby. Accordingly, the sentence is set aside. A rehearing on the sentence may be ordered by the same or a different convening authority.

Judge SMITH and Judge NEURAUTER concur.