**UNITED STATES, Appellee,**

v.

**Private E1 Scott G. CAMPBELL, 140–64–4747, United States Army, Appellant.**

**ACMR 8902267.**

U.S. Army Court of Military Review.

15 Jan. 1991.

For Appellant: Captain Alan M. Boyd, JAGC, Captain Robin K. Swope, JAGC (on brief).

For Appellee: Colonel Alfred F. Arquilla, JAGC, Lieutenant Colonel Daniel J.

---

\* Judge Dennis M. Corrigan took final action on this case prior to his reassignment.

Dell'Orto, JAGC, Captain Timothy W. Lucas, JAGC (on brief).

Before De GIULIO, NAUGHTON and VARO, Appellate Military Judges.

## OPINION OF THE COURT

VARO, Judge:

Contrary to his pleas, appellant was convicted by a military judge sitting as a general court-martial of rape, consensual sodomy, and assault in violation of Articles 120, 125, and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 920, 925, and 928 (1982) [hereinafter UCMJ]. His approved sentence provides for a dishonorable discharge, forfeiture of all pay and allowances, and confinement for two years.

The appellant asserts that the military judge erred by denying his motion at trial to dismiss the sodomy charge for lack of speedy trial.[1] He also asserts that the record of trial does not present sufficient evidence to support his rape conviction.

### I. *Speedy Trial*

The military judge denied the appellant's motion to dismiss for lack of speedy trial. The following is a summary of his findings on the motion:

a. The 120–day clock of Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 707(a) [hereinafter R.C.M.] began to run on 10 January 1989 when the appellant was placed under restriction pending the investigation of allegations against him.

b. Approximately one month later, the limits of the appellant's restriction were relaxed. This relaxation was not so significant as to stop the running of the clock.

c. On 29 March 1989, the appellant was punished under Article 15, UCMJ for an offense unrelated to his court-martial. His punishment included restriction for forty-five days.

d. Charges were preferred on 11 April 1989.

e. There was no evidence that the appellant received the Article 15 as a subterfuge by the government to avoid the speedy trial issue.

f. The primary purpose of the restriction of 29 March 1989 was administrative (i.e., punishment under Article 15) and totally unrelated to the court-martial.

g. The 13–day period between 29 March 1989 and 11 April 1989 was a significant break in the pre-trial restriction. This break was caused by the appellant's unrelated misconduct and thus allowed the speedy trial clock to start anew.

h. The appellant would have remained restricted even had he not committed the offense which led to the Article 15 and its resultant restriction.

The speedy trial clock started on 10 January 1989 when the appellant was placed under restriction, but was reset to zero on 29 March 1989. Had the clock run continually from 10 January 1989 until trial on 18 July 1989, the total elapsed time, accounting for defense delays of 29 days, would have been 148 days—a period in excess of the 120 days allowed by R.C.M. 707(a). Based on the military judge's ruling, however, the restart of the clock on 11 April 1989 (the day charges were proffered) resulted in a total elapsed time of 70 days, again accounting for the 29 days of defense delay. Despite the fact that the appellant's Article 15 restriction commencing 29 March 1989 was for 45 days, the speedy trial clock had to begin again 13 days later with the preferral of charges on 11 April 1989. *See* R.C.M. 707(a)(1). Thus we are faced with two issues: whether the Article 15 punishment equates to a release from the ongoing pre-trial restraint, and if so, whether the 13–day period between 29 March and 11 April 1989 was a sufficient release from pre-trial restraint so as to reset the speedy trial clock to zero. *See* R.C.M. 707(b)(2).

We find no error in the military judge's determination. The appellant's Article 15 punishment given on 29 March 1989 was the result of unrelated misconduct. This

1. Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 707(a) [hereinafter R.C.M.].

court has found that misconduct by an accused's absence without leave will restart the speedy trial clock, not just toll its running. *United States v. Alexander*, 26 M.J. 587 (A.C.M.R.1988), *pet. denied*, 27 M.J. 290 (C.M.A.1988) (unauthorized absence started the clock anew). *See also United States v. Smith*, 5 M.J. 525 (N.C.M.R.1978), *pet. denied*, 5 M.J. 324 (C.M.A.1978) (appellant's period of incarceration by foreign civil authorities was not accountable to the government). *But see United States v. Lilly*, 22 M.J. 620 (N.M.C.M.R.1986) (unauthorized absence tolled the statute but did not reset the clock to zero).

■ In determining the running of a speedy trial clock, the "imposition of restraint under R.C.M. 707(a)(2) must be 'in connection with' the specification being challenged." *United States v. Robinson*, 28 M.J. 481, 482 (C.M.A.1989), quoting and affirming *United States v. Robinson*, 26 M.J. 954, 956 (A.C.M.R.1988). The Article 15 punishment given on 29 March 1989 was totally unrelated to the specification being challenged. While it was the result of a military justice action, in our opinion the Article 15 restraint lacks any relationship to the challenged specification and makes it more akin to an administrative restraint as defined in R.C.M. 304(h). Thus, because no charges had been preferred on 29 March 1989, the appellant's misconduct resulted in a change in the purpose of his restriction: from restraint pursuant to R.C.M. 304(a)(2) to administrative restraint in the form of punishment under Article 15, UCMJ. As such, during the 13–day period from 29 March to 11 April 1989, we consider the appellant to have been released from pretrial restraint. We further hold this period to be a significant period within the meaning of R.C.M. 707(b)(2). *See United States v. Turk*, 22 M.J. 740 (N.M.C.M.R.1986), *aff'd*, 24 M.J. 277 (C.M.A.1987); *United States v. Hulsey*, 21 M.J. 717 (A.F.C.M.R.1985), *pet. denied*, 22 M.J. 353 (C.M.A.1986) (five days determined to be a significant period of release where no subterfuge was involved).

■ In light of the findings on the charges challenged by the speedy trial motion,[2] it is apparent that the appellant's commander's decision to proceed with nonjudicial punishment on 29 March 1989 was based on his belief that nothing would come of the investigation into the other charges. Thus, the military judge's determination that the Article 15 was not a subterfuge to avoid the speedy trial issue was well-founded. *See United States v. Schilf*, 1 M.J. 251, 252 (n.2) (C.M.A.1976).

## II. *Sufficiency of the Evidence*

■ The appellant's rape conviction involves an allegation of rape separate from that of which he was acquitted (see footnote 2). The victim, Ms. H. was a 22–year–old music student. On the night in question, Ms. H and her girlfriend had made plans to go to a club in Ludwigsburg with Bill B., a friend of the appellant's. The appellant came along and drove the group in his van. The appellant asserts, as he did at trial, that on return from the club he had sexual relations with Ms. H. The appellant asserts this activity was done without force or lack of consent. Rather it was a totally consensual relationship on the part of both parties. On review of the record of trial, we find the following facts to have occurred:

a. Ms. H. agreed to talk with the appellant in his van.

b. The appellant pulled Ms. H. into the back of the van against her will and started grabbing and kissing her.

c. Ms. H. was unsuccessful in her attempt to exit the van after the appellant grabbed her.

d. Ms. H. told the appellant she did not want him to touch her or have sex with her and that she wanted to get out of the van.

e. Despite her statements, the appellant proceeded to force himself upon Ms. H. in the back of van and eventually pulled

**2.** Appellant was found not guilty of rape (Charge I); not guilty of forcible sodomy but found guilty of consensual sodomy (Charge II); and found not guilty of obstruction of justice (Charge IV, renumbered as Specification 2 of Charge III).

her underwear aside and had sexual intercourse with her.

f. During the incident, Ms. H. was crying, scared, and unable to move because she was shocked. She stated she was unable to cry out because her throat was tight. More specifically, she stated: "I was like, paralyzed, I couldn't put up any resistance."

"Force and consent are indispensable to the offense of rape." *United States v. Williamson*, 24 M.J. 32, 34 (C.M.A.1987). Although resistance is not a required element that must be proven and pled, it is factual evidence that can be probative of the required elements (force and nonconsent) as well an applicable defense such as mistake of fact or acquiescence. In *Williamson*, the Court also noted that "the *totality* of the circumstances, including the level of resistance, are to be considered" in determining the absence of consent. *Williamson*, 24 M.J. at 34, *citing United States v. Henderson*, 15 C.M.R. 268, 273 (C.M.A.1954) (emphasis in original).

The appellant asserts that the record of trial contains no evidence of force, and that the nature of resistance was such that could have led the appellant to believe the victim was consenting to his actions, thus raising a defense of mistake of fact. Citing the Army Court of Military Review decision in *United States v. Bonano-Torres*, 29 M.J. 845 (A.C.M.R.1989), *aff'd in part and rev'd in part*, 31 M.J. 175 (C.M.A.1990), the appellant further asserts that even if the victim did not consent, the lack of evidence of force warrants reversal of the rape conviction.

We find the facts before us to be a far cry from those set forth in *Bonano-Torres*. In that case, although the victim did not really want to have sex with Bonano-Torres, she determined it was the fastest and easiest way to get rid of him so that she could go to sleep. The resultant act could at best be labeled undesired sex for convenience, but not rape. In the case at bar, Ms. H. had no ulterior motive for having sex. In fact, she consistently told the appellant she did not want to. She was pulled to the back of the appellant's van

against her will and forced to submit to his sexual desires. There was no mistake on anyone's part as to the desires and resistance of Ms. H. Reviewing the totality of the circumstances, we find the evidence clearly sufficient to support the findings of guilty of rape. *Williamson*, 24 M.J. at 32.

We have reviewed the issues raised personally by the appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982) and find them to be without merit.

The findings of guilty and the sentence are affirmed.

Senior Judge DE GIULIO and Judge NAUGHTON concur.