UNITED STATES, Appellee,

v.

Sergeant First Class Willie C. CLARK,
486–62–4555, United States
Army, Appellant.

ACMR 8901402.

U.S. Army Court of Military Review.

29 Jan. 1991.

For Appellant: Captain Brian D. Bailey, JAGC (argued), Captain Timothy P. Riley, JAGC, Captain Allen F. Bareford, JAGC, Captain Patricia D. White, JAGC, Captain Paula C. Juba, JAGC (on brief).

For Appellee: Captain Timothy J. Saviano, JAGC (argued), Colonel Alfred F. Arquilla, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Captain Denise J. Arn, JAGC (on brief).

Before NAUGHTON, CORRIGAN and JOHNSTON, Appellate Military Judges.

---

OPINION OF THE COURT

CORRIGAN, Judge: *

Contrary to his pleas, the appellant was found guilty by a military judge sitting as a general court-martial of rape in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920 (1982) [hereinafter UCMJ].[1] The convening authority approved the sentence of a dishonorable discharge, confinement for seven years, and reduction to the grade of Private E1.

The appellant contends that the evidence is legally and factually insufficient to support a finding of guilty of rape because the sexual intercourse was consensual and it was not consummated by force or against the will of the victim. In addition, pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), the appellant contends, *inter alia*, that he was denied a public trial and the effective assistance of counsel. We disagree.

The appellant, a sergeant first class, was a supervisor of kitchen police (a "pusher of KPs") at a dining facility in a basic training unit. PVT I was a trainee on duty under the appellant's supervision. The appellant ordered her to clean an area where kitchen equipment was to be turned-in. PVT I testified that the appellant had made personal remarks to her during the duty day to the point where she asked a fellow male trainee to assist her because the appellant both "scared" her and "he was weird." Later, the appellant came to the area and ordered her to accompany him to a storage shed to get cleanser so the cleaning job could be done correctly. PVT I reluctantly followed the appellant outside to a shed which was out of view of anyone in the training unit.

The appellant unlocked the door and motioned PVT I into the shed. The room was small and dark. It had brick walls and a metal door. The appellant entered after

---

* Judge Dennis M. Corrigan took final action on this case prior to his reassignment.

1. The appellant pled guilty to a violation of UCMJ art. 92, 10 U.S.C. § 892, fraternizing with a trainee in contravention of a local general regulation, and pled not guilty to a violation of UCMJ art. 134, 10 U.S.C. § 934, obstruction of justice. The military judge found the appellant not guilty of the violation of UCMJ art. 92, stating that it was multiplicious for findings with the finding of guilty of rape. He also found the appellant not guilty of obstructing justice.

PVT I and closed the door. The room was pitch black. The appellant asked, "[W]here are you", reached for PVT I, grabbed her arm, and kissed her. PVT I did not return his kiss and "stiffened her body." The appellant then unbuttoned his trousers, exposed his penis, took PVT I's hand and placed it on his penis, and rubbed it back and forth. He then directed her to take off her trousers. She unbuttoned only the top two buttons, hoping that he would be unable to get her trousers down and would stop. But he was able to pull her trousers down below her buttocks and attempt intercourse. Being unsuccessful, he ordered her to turn around and bend over. The appellant then penetrated her vagina and continued intercourse for "what seemed like forever." During the intercourse the appellant grabbed PVT I's breast roughly.

PVT I then, for the first time, verbally told the appellant to stop by stating, "[S]omeone may come." The appellant withdrew, checked outside the door, and let PVT I pull up her trousers and leave. According to the testimony of the male trainee, upon her return to the work area, PVT I was clearly upset and in distress. Later, the appellant approached PVT I and told her not to tell anyone what had happened or they both would be in trouble, and that the next time she was on KP they would have sex again. Despite this caution and because of the repeated questioning by a friend at the billets upon that friend's discovery of red marks on PVT I's chest and back, PVT I finally reported the rape. A subsequent medical exam confirmed that she had had sexual intercourse but did not substantiate the testimony of two female trainees concerning the red marks.[2] Thereafter, PVT I refused to go to the mess hall to eat until ordered to do so. She also experienced nightmares that required the comfort of her friends in the billets.

The appellant's version of what transpired is starkly different. He testified that PVT I flirted with all the males who were in the dining facility, including him. The flirting was also perceived by two witnesses. PVT I had come to him to ask for cleanser. This request seemed strange to the appellant because he thought there should have been at least one-half of a can of cleanser left. The appellant started across the loading area towards the storage shed, but stopped on the way to break up some trainees who were roughhousing. These trainees testified that they could not remember seeing PVT I following the appellant on his way to the shed.[3] After he entered the shed, PVT I arrived and came in behind him. As she closed the door, she told the appellant they should "make it." He reached for her and they kissed. He fondled her breast while she placed her hand on his crotch. The appellant then turned off the light, exposed his penis, and hugged her. She caressed his penis, then undressed, and they tried intercourse standing upright. The appellant asked PVT I to turn around and bend over. He penetrated her vagina and stopped the intercourse when she said that someone may come and "catch" them.

PVT I dressed and the appellant looked out the door to see if anyone was nearby. As PVT I left, she turned and smiled at him. He later told her they could have sex again the next time she was on KP. The appellant testified that he told the civilian supervisor at the dining facility that he had had sex with a trainee. The supervisor confirmed that the appellant told him that the incident had occurred.

## I.

### SUFFICIENCY OF THE EVIDENCE

The standard for this court's review for legal and factual sufficiency of the evidence is well settled:

The test for the former is whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the

---

2. PVT I's "buddy" testified that she found PVT I in the shower shortly before the medical exam scrubbing her body in hot water and sobbing that she had to wash the dirt off.

3. Both trainees were unsure on which date they had seen the appellant and been corrected by him.

essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). For factual sufficiency, the test is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, the members of the Court of Military Review are themselves convinced of the accused's guilt beyond a reasonable doubt.

*United States v. Turner*, 25 M.J. 324, 324–325 (C.M.A.1987).

Manual for Courts–Martial, United States, 1984 [hereinafter MCM 1984], Part IV, para. 45c.(1)(b), describes force and lack of consent as elements of the offense of rape as follows:

> Force and lack of consent are necessary to the offense. Thus, if the female consents to the act, it is not rape. The lack of consent required, however, is more than mere acquiescence. If a woman in possession of her mental and physical faculties fails to make her lack of consent reasonably manifest by taking such measures of resistance as are called for by the circumstances, the inference may be drawn that she did consent. Consent, however, may not be inferred if resistance would have been futile, where resistance is overcome by threats of death or great bodily harm, or where the female is unable to resist because of the lack of mental or physical faculties. In such case there is no consent and the force involved in penetration will suffice. All the surrounding circumstances are to be considered in determining whether a woman gave her consent, or whether she failed or ceased to resist only because of a reasonable fear of death or grievous bodily harm.

The appellant insists that, using either the legal or factual sufficiency test, the testimony of both PVT I and the appellant shows that PVT I never communicated any lack of consent and that there is insufficient evidence of force to support a finding of guilty of rape. We disagree.

### A. *Legal Sufficiency*

The appellant contends that PVT I failed to adequately communicate to him her lack of consent either verbally or by the level of her resistance. He points first to the most obvious area of agreement in both versions of what occurred in the shed, namely, that PVT I never verbally communicated her lack of consent. In addition, appellant notes that in both versions he withdrew and stopped when PVT I told him someone may discover them. What the appellant seems to be arguing is that PVT I must have consented because when first asked to stop, he did.

■ We note at the outset that there is no absolute requirement for the victim of a rape to verbally communicate her lack of consent. *United States v. Watson*, 31 M.J. 49 (C.M.A.1990). The failure to communicate a lack of consent raises only the inference that the victim consented—an inference that may be rebutted by other facts and circumstances indicating that there was a lack of consent. *Id.*, at 52–53; *United States v. Bonano–Torres*, 31 M.J. 175 (C.M.A.1990). As noted, MCM, 1984, Part IV, para. 45c.(1)(b), also delineates two situations, applicable here, when the inference need not be drawn: when the victim is in fear of death or grievous bodily harm, or when resistance would be futile.

■ Viewing the evidence in the light most favorable to the government, there is sufficient competent evidence from which the trier of fact could conclude either that no inference of consent should be drawn or, even if drawn, any inference of consent was rebutted. PVT I testified that she was "scared" of the appellant and that she passively resisted because to do more would have caused the appellant to hurt her. PVT I was ordered by her superior noncommissioned officer, her "KP pusher," to accompany him and he directed her movements, *i.e.*, to take off her trousers; to put her hand at his crotch; and, to turn around and bend over. *See United States v. Bradley*, 28 M.J. 197 (C.M.A.1989); *United States v. Hicks*, 24 M.J. 3 (C.M.A.1987), *cert. denied*, 484 U.S. 827, 108 S.Ct. 95, 98 L.Ed.2d 55 (1987). The appellant made

610

sure that the place of the rape was isolated and out of the view of other trainees. It was a "pitch" black room built of bricks with a metal door. *See United States v. Williamson*, 24 M.J. 32 (C.M.A.1987); *United States v. Henderson*, 15 C.M.R. 268 (C.M.A.1975). He was a large man who positioned himself between the door and his victim, and he "grabbed her" and kissed her. *See United States v. Jackson*, 25 M.J. 711 (A.C.M.R.1987), *petition denied*, 27 M.J. 1 (C.M.A.1988). Under these circumstances, it was reasonable for PVT I to fear for her life, to have a reasonable fear of grievous bodily injury, and to believe that resistance would be futile. The military judge, in accord with MCM, 1984, para. 45c.(1)(b), could have found as a matter of law that the inference of consent could not be drawn from PVT I's passive resistance or her failure to verbally or otherwise absolutely communicate her lack of consent.[4]

Relying on *Bonano–Torres, Bradley*, and *Hicks*, the appellant contends that in the absence of force a finding of guilty of rape cannot be sustained. Noting that a medical examination of PVT I conducted on the same night as the alleged rape indicated no sign of force, the appellant urges reversal of his conviction. He argues that in the absence of resistance by PVT I, a woman fully capable of resisting or manifesting her lack of consent, more than the force incidental to sexual intercourse is required.

■ We find that there is more than sufficient evidence of force to support the finding of guilty of rape. The appellant ordered PVT I to accompany him, an order that was her duty to obey. *See Jackson*, 25 M.J. at 711. He confined her in the dark, in a small shed, in an area isolated from any potential witnesses. *Williamson*, 24 M.J. at 32. He "grabbed" her and kissed her, taking her hand and rubbing it on his penis. He "grabbed her breast

roughly" as the intercourse progressed. And, viewing the evidence most favorably for the government as we must, the red marks on her chest and in the area of her back where her bra strap was located indicate the application of force by the appellant.

■ Even if we were to accept the appellant's version of the incident, the doctrine of constructive force would apply. MCM, 1984, para. 45c.(1)(b), clearly enunciates the rule reiterated by the Court of Military Appeals in *Bonano–Torres*, 31 M.J. at 179, that the force incidental to the sexual intercourse itself is sufficient where resistance is futile or where the victim fears death or grievous bodily harm. Mindful of the need to view the perception of the events from both the attacker's and the victim's perspective, we believe the constructive force doctrine applies here. As we noted above, there is more than sufficient evidence of PVT I's belief that any resistance other than the passive stiffening of her body and the unbuttoning of no more than two buttons on her trousers would be futile. Her fear of death or grievous bodily harm was reasonable.

We hold that the appellant cannot create by his own actions an environment of isolation and fear and then seek excusal from the crime of rape by claiming the absence of force.

### B.   Factual Sufficiency

■ Our independent review of the evidence convinces us beyond a reasonable doubt that appellant is guilty of the rape. PVT I's version of the event is supported by her roommates who provided uncontroverted evidence of her mental state and of the bruises on her back and breast. This evidence is consistent with her claim. To rebut this evidence the defense sought to establish that PVT I made a complaint of rape to "cover" herself so that a boyfriend

---

4. The defense of honest and reasonable mistake of fact was not expressly raised by the appellant at trial or on appeal. *See United States v. Taylor*, 26 M.J. 127, 131 (C.M.A.1988) (defense not raised where, as here, evidence of mistake of fact is not contained in the record and the

defense at trial was never expressly or even impliedly raised). However, we are satisfied beyond a reasonable doubt that the defense does not exist on these facts. *United States v. McFarlin*, 19 M.J. 790 (A.C.M.R.), *petition denied*, 20 M.J. 314 (C.M.A.1985).

and her parents, already upset by an abortion, would not be critical. In addition, the appellant called an expert to assert that PVT I's behavior after the event, her mental state, and minor inconsistencies in her statements to investigators, were consistent with her cover-up. We find this evidence unpersuasive. The military judge was in the best position to view the victim's demeanor and evaluate the expert's opinion on her behavior. We will not disturb his findings.

The appellant's evidence bolstering his testimony that PVT I followed him to the shed for the purpose of seducing him is also unpersuasive. Although two trainees testified that they saw the appellant proceeding to the shed and confirmed that he had corrected them for "roughhousing," they were not certain which day they saw the appellant. In addition, the trainees were not helpful to the appellant's theory of the case for they did not see PVT I following him to the shed as claimed. In rebuttal, the government introduced evidence showing that these trainees had scheduled training on that date and at the time of the rape.

Finally, the appellant sought to support his theory that PVT I seduced him by offering the testimony of his civilian supervisor that he reported, just after the event, that he had had sex with a trainee. The appellant argues that making such a report is inconsistent with rape. However, the civilian supervisor's testimony is equally consistent with a conclusion that the appellant was beginning to build a defense to a claim of rape. We will not substitute our judgment for that of the military judge as trier of fact in drawing one of two possible inferences.

We are satisfied that the finding of guilty of rape is supported by sufficient evidence beyond a reasonable doubt.

## II.

### PUBLIC TRIAL

The appellant contends that he was denied his right to a public trial because noncommissioned officers were excluded by order of their battalion commander.

■ The claim is that a friend of his was thereby barred from the trial. *See United States v. Grunden*, 2 M.J. 116 (C.M.A. 1977). If true, the order by the battalion commander could have denied the appellant his right to a public trial and would arguably be unlawful command influence. This claim of unlawful command influence is supported by an affidavit of a noncommissioned officer that she was told by another noncommissioned officer that, at a meeting, members of the unit were instructed not go to the court-martial unless they had business there. The appellant submits a second affidavit from his brother who stated that he overheard the trial counsel reprimand another noncommissioned officer for attending the trial. In rebuttal, the government has furnished affidavits from the trial counsel and the battalion commander. It appears that as the trial commenced there were more spectators than seats available, causing the military judge to inquire of the trial counsel how he intended to handle the large crowd. The trial counsel mentioned to the commander that the crowd at the courtroom was large. The commander told the trial counsel that it would be unlawful for him to keep members of his unit from attending the trial, and that he believed it would be beneficial for the soldiers in his unit to attend.

■ The right to a public trial is deeply rooted in military law. *United States v. Hershey*, 20 M.J. 433 (C.M.A.1985), *cert. denied*, 474 U.S. 1062, 106 S.Ct. 809, 88 L.Ed.2d 784 (1986); *Grunden*, 2 M.J. at 116. Conditioned as this claim is on an allegation of unlawful command influence, this court is required to carefully inquire into any assertion of misconduct on the part of command. *United States v. Thomas*, 22 M.J. 388, 394 (C.M.A.1986). When unable to resolve a claim of command influence on the record before us, affidavits may be submitted in an effort to assist our factfinding. *United States v. Treakle*, 18 M.J. 646, 650 n. 3 (A.C.M.R.1984). Although it is a wise course for the court to order a hearing under *United States v.*

*DuBay,* 37 C.M.R. 411 (1967), to resolve inconsistencies in the affidavits, we find that a *DuBay* hearing is not required here for there is no credible, substantive dispute.

■ We find the affidavits submitted by the appellant not credible. They transmit hearsay and double hearsay that is not factually inconsistent with the affidavits submitted by the government. The inconsistencies that do appear are based on the conclusions drawn by the affiants, not based in fact. We are satisfied that the command made no attempt to deny the appellant an open trial. On the contrary, the appellant's battalion commander was well aware of the responsibility to assure the appellant an open trial and he communicated it to the trial counsel. Rather than discourage attendance at the trial, he believed it provided his troops a valuable training experience and wanted those who could be spared from duties or who had "business" at the trial to attend. The appellant's claim is without merit.

### III.

### INADEQUACY OF COUNSEL

The appellant contends his civilian counsel[5] was inadequate in three respects: he failed to request a change of venue or challenge either the array of court members or the military judge; he failed to call witnesses on the merits and in extenuation and mitigation; and, he failed to file statements with the convening authority along with his R.C.M. 1105 and 1106 submissions. We disagree.

■ As with any claim of inadequacy, the standard enunciated in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), applies to each of the appellant's claims of inadequa-

cy. First, there must be a showing of a deficiency, which often requires a court to resolve a substantive issue upon which courts and trial practitioners may disagree. *See United States v. Brothers,* 30 M.J. 289 (C.M.A.1990). Trial decisions of defense counsel will be presumed to be made within that wide range of acceptable trial strategy that exemplifies the professional lawyer. *Id.,* at 291. Even if found outside the parameters of the wide range of acceptable reasonable professional assistance, counsel's performance must be tested for prejudice by determining if the outcome would be different.[6] *United States v. Griffith,* 27 M.J. 42 (C.M.A.1988). Testing the appellant's claims of inadequate counsel against these norms, we are satisfied that they are without merit.

■ The appellant states that, prior to his trial, he testified in a court-martial of a fellow soldier that there had been misconduct between the president of that court-martial and the trial counsel. He further states that the military judge and the panel at that court-martial were scheduled to also sit at his court-martial. Apparently, in the prior trial, the military judge ruled that there had been no misconduct.[7] The appellant argues that the military judge must have ruled that his testimony was not credible; and, since the court members at his trial knew that he had accused their president of misconduct, he could not risk having his fate being decided in a court with these same members. The claim of inadequacy is rooted in his counsel's failure to challenge both the military judge and the array, or request a change of venue.

We do not believe we have to determine the substantive issues surrounding the bias or prejudice of either the military judge or the court members. The military judge

---

5. The appellant was also represented by individual military counsel from the U.S. Air Force.

6. When reviewing counsel's performance during submission of matters to the convening authority under R.C.M. 1105 and 1106, we do not read *United States v. Dorsey,* 30 M.J. 1156 (A.C.M.R. 1990), as establishing any *per se* rule contrary to *Strickland, Brothers,* and *Griffith. See United States v. Peek,* 24 M.J. 750 (A.C.M.R.1987), *peti-*

*tion denied,* 26 M.J. 80 (C.M.A.1988). If read otherwise, we decline to follow *Dorsey* because the unique facts there do not exist here.

7. Although urged to take judicial notice of the fellow soldier's case, we decline as we find it unnecessary. We will assume for the purposes of review that the facts are as alleged by the appellant.

announced he was not aware of any ground for challenge against him, attesting to the lack of any *sua sponte* realization by him that he harbored any bias against the appellant. By affidavit, the appellant's civilian counsel details discussions with the appellant and his military counsel where the pros and cons of requesting trial by military judge alone were outlined. The appellant's decision was to make such a request. These discussions reveal that the appellant and his counsel reviewed the desirability of raising his former testimony. They rejected raising a challenge against the military judge on the belief that trial by court members was not in the appellant's interests. We find the advice and assistance on choice of forum was well within the acceptable parameters of professional assistance by a trial lawyer. The appellant will not be heard to challenge the lawyer's advice simply because he does not like the outcome of the forum he chose.

█ Likewise, the trial strategy decision not to call two witnesses for the purpose of bolstering the appellant's credibility by affirming his good character for truthfulness, cannot be said to be outside these parameters. We will not use hindsight and wishful thinking to accuse the appellant's counsel of inadequacy where counsel believed that bolstering his client was of lesser importance than convincing the military judge that the victim, PVT I, was not credible. This is particularly so where the appellant's counsel, both military and civilian, concluded that the two witnesses were not that helpful and obtained the appellant's approval in not calling them. The conclusions of counsel cannot be said to be without some reasoned basis, and therefore, we will not categorize them as inadequate. *United States v. Bono*, 26 M.J. 240 (C.M.A.1988); *United States v. Mansfield*, 24 M.J. 611, 617 (A.F.C.M.R. 1987).

█ Finally, counsel's failure to provide statements of four persons to the convening authority is challenged as a ground of inadequacy. Counsel, in his affidavit,

states that he was assured by the appellant and his wife that statements were forthcoming from various sources. However, when no statements were forthcoming, he did not request a delay in filing a petition for clemency because he was not sure any statements would ever be forthcoming. In fact, the four statements were forwarded by a member of the civilian counsel's office a day before action was taken on the record but received by the staff judge advocate's office after action was taken by the convening authority. We find the better course would have been for counsel to obtain the statements himself or, at the least, seek additional time to obtain them. *United States v. Harris*, 30 M.J. 580 (A.C. M.R.1990). However, our review satisfies us that the contents of the statements were merely cumulative of matters submitted by the appellant's civilian counsel pursuant to R.C.M. 1105 and 1106, and in the record of trial, and brought to the attention of the convening authority in the post-trial recommendation by the staff judge advocate. We are satisfied that the outcome would not have been different had the convening authority had the statements. *United States v. Curry*, 31 M.J. 359, 376–377 (C.M. A.1990).

We find that the defense team, specifically the civilian defense counsel, provided the appellant professional, diligent, competent, and zealous assistance throughout the trial and the post-trial phases. The appellant's claims to the contrary are without merit.

The remaining assignments of error, including those raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), are without merit.[8]

The findings of guilty and the sentence are affirmed.

Senior Judge NAUGHTON and Judge JOHNSTON concur.

---

8. Our review of the appellant's *Grostefon* matters included the two unsigned submissions titled as "Supplemental Assignment of Error" that are attached as appendices A and B to the appellant's Motion to File Personal Assertions of Error. This motion was filed with this court on 27 Sept. 1990.