UNITED STATES, Appellee,

v.

Charles N. HICKS, Jr., Sergeant U.S.
Marine Corps, Appellant.

No. 52157.
NMCM 84 1194.

U.S. Court of Military Appeals.

April 13, 1987.

Certiorari Denied Oct. 5, 1987.
See 108 S.Ct. 95.

For Appellant: *Homer A. Walkup, Esq.* (argued); *Lieutenant Commander James J. Quigley*, JAGC, USN (on brief); *Lieutenant Commander Harold Shaw*, JAGC, USN.

For Appellee: *Major E.D. Clark*, USMC (argued); *Captain Carl H. Horst*, JAGC, USN and *Lieutenant David O. Vollenweider, III*, JAGC, USNR (on brief); *Captain W.J. Hughes*, JAGC, USN, *Major F.F. Krider*, USMC, *Lieutenant Bryan D. Saunders*, JAGC, USNR.

*Opinion*

COX, Judge:

Contrary to his pleas, appellant was convicted by a general court-martial composed of military judge alone of rape, extortion, and adultery, in violation of Articles 120, 127, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920, 927, and 934, respectively. He was sentenced to confinement for 30 years, forfeiture of all pay, reduction to E–1, and a dishonorable discharge. The convening authority disapproved the findings as to the adultery charge but approved the sentence. The Court of Military Review affirmed in a per curiam opinion. This Court granted review of five issues. 21 M.J. 166. Finding no error prejudicial to the substantial rights of appellant, we affirm. Art. 59(a), UCMJ, 10 U.S.C. § 859(a).

The evidence showed that the 20–year-old prosecutrix, Julie P., arrived at Camp Lejeune, North Carolina, on Friday, June 3, 1983, to visit her boyfriend, Private First Class Walter Litteral. Appellant, who was Litteral's section leader, discovered on Sunday afternoon that Julie was staying with Litteral in his barracks room, apparently in violation of a barracks regulation. Appellant informed Litteral that he would be in

trouble if the staff duty officer learned that he had a female in his room and suggested that Litteral take Julie to appellant's room to avoid her being discovered. Litteral complied, taking Julie to appellant's room in the barracks and instructing her to lock the door and to admit no one while he was gone to perform mess duty.

Shortly after Julie entered appellant's room, someone knocked on the door and stated that it was Sergeant Hicks and that he needed to get into his room. Julie unlocked the door and appellant entered. He told her that he was in charge of the men whose names were listed on the wall chart. Appellant seated himself at the desk and began to write on a yellow pad, asking her name and where she was from, speaking at all times in a stern and authoritative manner. He told Julie that he was preparing a charge sheet on Litteral. He then tore the sheet of paper from the pad and handed it to her. It stated something to the effect that PFC Litteral had her in the barracks contrary to regulations. When Julie inquired as to the consequences for her friend, appellant answered that Litteral would have to go before officers and lose his pay and privileges and that "he would probably get thrown in the brig."

Appellant asked Julie if she "wanted to get ... Litteral out of that trouble?" To her response of "Yes, I would," appellant said, "You ... You, for Litteral's trouble." Appellant then crumpled up the sheet of paper and threw it down. He came over to Julie, took her hand, and asked, "Have we got a deal?" Julie did not answer. Still holding her hand, appellant said, "It doesn't matter if you cooperate or not, I'm going to give it to you anyway." Julie testified that she realized appellant's intentions at that point and "thought that maybe I could hurt him if I kicked him hard and ran, but I didn't have anywhere to go, and I didn't know anybody, I didn't know where ... [Litteral] was." She "was scared" and "trembling at that time" and "just stood there." Appellant proceeded to remove her clothing and have sexual intercourse with her. Julie admitted that she offered no resistance, explaining as follows:

> Because I had read articles and seen on talk shows, and I've read articles on rape, and everyone advised that you should never try to fight the man, because you cannot outpower him and if you should not hurt him enough to get away, he'll hurt you back, it will make him mad and he'll hurt you back and the only thing you can do is cooperate.

Julie did not tell anyone of the incident right away, but eventually told her girl friend and brother. She made a formal complaint on June 20.

### I.

■ The first granted issue concerns whether appellant's actions as alleged and proved constitute the offense of extortion under Article 127. The extortion specification alleges as follows:

> Sergeant ... HICKS, ... did, ... with intent unlawfully to obtain sexual favors from Julie ..., communicate to the said Julie ... a threat to accuse ... LITTERAL ..., of having violated a lawful regulation, to wit: ... [having] a female ... in his barracks room in violation of appropriate Barracks regulations.

The offense of extortion is composed of two elements: (1) communication of a threat; (2) "with the intention thereby to obtain anything of value or any acquittance, advantage, or immunity." Art. 127.

Appellant maintains that communicating a threat with the intent to obtain sexual favors does not satisfy the second element of extortion under Article 127. He posits that the intent to gratify a personal desire is not an "advantage" or "anything of value" under the statute. We specifically reject the suggestion that these statutory terms do not extend to sexual favors or the fulfillment of subjective desires. It is sufficient if there is some "value" or "advantage" to the accused in the thing sought. "Value" and "advantage" are broad concepts and are not limited to pecuniary or material gain. *United States v. McCollum,* 13 M.J. 127, 129–30 (C.M.A.1982). In

the instant case, the elements of Article 127 are satisfied both in the allegations and in the proof.

## II

■ The next granted issue concerns whether the evidence is sufficient as a matter of law to convict appellant of rape. Appellant contends that the evidence does not establish that the sexual intercourse was accomplished by force *and* without Julie's consent. The elements of rape are that: (1) the accused committed an act of sexual intercourse with a female; (2) the female was not his wife; and (3) the act of sexual intercourse was done "by force and without her consent." Art. 120(a). "All the surrounding circumstances are to be considered in determining whether a woman gave her consent, or whether she failed or ceased to resist only because of a reasonable fear of death or grievous bodily harm." Para. 199a, Manual for Courts-Martial, United States, 1969 (Revised edition). The force used to accomplish the sexual intercourse may be actual or constructive. *United States v. Henderson*, 4 U.S.C.M.A. 268, 15 C.M.R. 268 (1954); *United States v. DeJonge*, 16 M.J. 974 (A.F.C.M.R. 1983). Furthermore, constructive force may consist of expressed or implied threats of bodily harm. *See United States v. Lewis*, 6 M.J. 581 (A.C.M.R.1978), *pet. denied*, 6 M.J. 194 (1979); *Maryland v. Rusk*, 289 Md. 230, 424 A.2d 720 (1981); *State v. Hines*, 286 N.C. 377, 211 S.E.2d 201 (1975); *State v. Dill*, 42 Del. 533, 40 A.2d 443 (Trial Court 1944).

■ Evidence demonstrated that:

(1) Appellant and the victim were not married and, indeed, were not acquainted until the incident in question;

(2) Appellant was in a position of authority over the victim's boyfriend and manipulated the situation to get the victim alone in appellant's room;

(3) Appellant created a coercive atmosphere, threatening to report her boyfriend for a crime if she did not submit to him;

(4) Appellant indicated his intent to use whatever force was necessary to accomplish intercourse by stating, "It doesn't matter if you cooperate or not, I'm going to give it to you anyway;"

(5) Appellant spoke to the victim throughout the incident in a commanding, authoritative voice;

(6) The victim was placed in fear of bodily harm; she remembered being advised by various articles and television programs that it was better not to resist unless you are sure you can hurt your assailant to such an extent as to make good your escape; and

(7) The victim was unfamiliar with the area and felt she had nowhere to run for safety.

The existence and reasonableness of the victim's fear of bodily harm under the totality of the circumstances are questions of fact. *See Maryland v. Rusk, supra.* The military judge heard the evidence, observed the victim's demeanor, and obviously concluded that appellant's acts were sufficient to reasonably create in the victim's mind—having regard for the circumstances in which she was placed, and her age, size, and mental condition—a genuine fear of bodily harm. As this Court is expressly limited by Article 67(d), UCMJ, 10 U.S.C. § 867(d), "to matters of law," we are precluded from setting aside the findings of guilty based on insufficiency of the evidence unless there is no competent evidence from which a rational trier of fact could have found beyond a reasonable doubt the existence of every element of the offense. *United States v. Knudson*, 14 M.J. 13 (C.M.A.1982); *United States v. Taylor*, 21 U.S.C.M.A. 220, 44 C.M.R. 274 (1972). *See Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 2791, 61 L.Ed.2d 500 (1979). In our view, there is sufficient evidence to support the determination below that appellant accomplished the act of sexual intercourse by force and without consent.

## III

The third granted issue concerns the denial of a defense motion *in limine* to ex-

clude the testimony of four female witnesses who testified to prior similar acts of extortion by appellant in regard to each of them. Trial counsel offered the evidence under Mil.R.Evid. 404(b), Manual, *supra,* to show motive, intent, state of mind, and plan or scheme. Mil.R.Evid. 404(b) provides:

> *Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

### (a)

■ Although evidence of other crimes, wrongs, or acts is inadmissible to prove criminal propensity, it may be admissible when it is relevant for another purpose, such as those enumerated in the rule. *Cf. United States v. White,* 23 M.J. 84 (C.M.A.1986); *United States v. Rappaport,* 22 M.J. 445 (C.M.A.1986). The military judge admitted the evidence as tending

> to prove a scheme, plan, or modus operandi ... of the accused to utilize his rank as a noncommissioned officer in conjunction with the military legal system to procure or to coerce submission to dates and/or sexual intimacy with females found or placed in compromising positions.

We cannot say that the evidence of other acts tended to prove only criminal propensity. It was also highly probative of a certain method or scheme employed by appellant to use his position of authority "to orchestrate events" to obtain sexual or monetary favors from vulnerable females. *See Oliphant v. Koehler,* 594 F.2d 547, 553 (6th Cir.1979). In making his ruling, the military judge conducted on the record the proper analysis and concluded that: (1) the

evidence tended to prove that appellant committed prior crimes, wrongs, or acts; (2) the evidence was offered for a proper purpose; and (3) the probative value was not substantially outweighed by the danger of unfair prejudice. *See United States v. White, supra.* We are satisfied that the military judge did not abuse his discretion in so ruling. *See United States v. Brooks,* 22 M.J. 441 (C.M.A.1986); *United States v. Watkins,* 21 M.J. 224 (C.M.A.1986).

### (b)

Appellant further asserts that the principle of collateral estoppel barred introduction of the testimony of at least two of the witnesses because these women testified to acts of which appellant had been tried by courts-martial and acquitted. This is a question of first impression for this Court. Unfortunately, the only information concerning the acquittals provided in the record of trial is copies of the court-martial orders of the prior trials. They reflect that appellant was acquitted at a special court-martial in October 1980 of extortion, indecent assault, and committing an indecent act involving one witness; and at a general court-martial in March 1982 of attempted rape, assault with intent to commit rape, and communication of a threat involving another witness.

■ " 'Collateral estoppel' .... means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the *same parties* in any future lawsuit." *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970)(emphasis added). In *Ashe,* the Supreme Court determined that collateral estoppel applies to criminal prosecutions as part of the constitutional prohibition against double jeopardy.* The case involved the robbery of six men while they were playing poker. Several armed men participated and robbed each player. Ashe was tried on a charge of robbing Knight,

---

* The Fifth Amendment provides: "No person ... shall be subject for the same offense to be twice put in jeopardy of life or limb."

one of the poker players, and acquitted. Ashe was later brought to trial for the robbery of another player (Roberts) and convicted. The identification testimony at the first trial was weak but the testimony was stronger at the second trial. After examining the record of the first trial, the Supreme Court concluded:

[T]he record is utterly devoid of any indication that the first jury could rationally have found that an armed robbery had not occurred, or that Knight had not been a victim of that robbery. The single rationally conceivable issue in dispute before the jury was whether ... [Ashe] one of the robbers. And the jury by its verdict found that he had not. The federal rule of law, therefore, would make a second prosecution for the robbery of Roberts wholly impermissible.

\* \* \* \* \* \* \*

The question is not whether ... [Ashe could be charged] with six separate offenses for the robbery of the six poker players. It is not whether he could have received a total of six punishments if he had been convicted in a single trial of robbing the six victims. It is simply whether, after a jury determined by its verdict that ... [Ashe] was not one of the robbers, the State could constitutionally hale him before a new jury to litigate that issue again.

*Id.* at 445, 446, 90 S.Ct. 1195. The issue of identity, which was essential to the second trial, had been resolved in Ashe's favor in the first trial. Applying collateral-estoppel principles, the Court held that the state could not constitutionally subject Ashe to litigation of the issue of identity before a second jury.

The *Ashe* decision left open whether an ultimate issue of fact may be used as an evidentiary fact in a subsequent trial. This has resulted in disagreement among the courts about the extent of the application of the doctrine of collateral estoppel to the evidentiary use of prior acts of which an accused has been acquitted.

Commentators characterize as in the minority the courts that apply a collateral-estoppel approach to determine admissibility of evidence which resulted in acquittal at a prior trial. *See* E. Imwinkelried, *Uncharged Misconduct Evidence* §§ 10:03 through 10:07 (1984); Annot., 25 A.L.R. 4th 934 (1983); 2 *Weinstein's Evidence,* para. 404[10] at 404–58 (1982); 22 Wright and Graham, *Federal Practice and Procedure: Evidence* § 5249 at 535–56 (1978). Application of the doctrine of collateral estoppel requires the trial judge

to "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration."

*Ashe v. Swenson,* 397 U.S. at 444, 90 S.Ct. at 1194 (citations in footnote omitted). The defense has the burden of showing that the acquittal necessarily resolved the issue that the defendant seeks to foreclose from consideration in the subsequent trial. *Albert v. Montgomery,* 732 F.2d 865 (11th Cir. 1984); *United States v. Johnson,* 697 F.2d 735 (6th Cir.1983); *United States v. Mespoulede,* 597 F.2d 329 (2d Cir.1979).

The majority, and I believe the better, view is that collateral estoppel does not preclude use of otherwise admissible evidence even though it was previously introduced on charges of which an accused has been acquitted. *United States v. Riley,* 684 F.2d 542 (8th Cir.1982), *cert. denied,* 459 U.S. 1111, 103 S.Ct. 742, 74 L.Ed.2d 962 (1983); *United States v. DeVincent,* 632 F.2d 147 (1st Cir.), *cert. denied,* 449 U.S. 986, 101 S.Ct. 405, 66 L.Ed.2d 249 (1980); *United States v. Van Cleave,* 599 F.2d 954 (10th Cir.1979). The questions to be decided are whether the evidence is relevant (Mil.R.Evid. 401) and whether the probative value of the proffered evidence is outweighed by its prejudicial effect (Mil.R.Evid. 403). The relevance of evidence of prior misconduct is governed by Mil.R. Evid. 404(b). In *Ashe v. Swenson, supra,* the fact underlying the issue of identity—

that is, whether the accused was present at the robbery—was an ultimate fact and essential for conviction in both proceedings. On the other hand, the other-acts evidence here was totally separate from the instant offenses in time and place; was used for a limited evidentiary point; did not require proof beyond a reasonable doubt; and, although probative, was unnecessary to support a conviction of the instant charges.

The general verdict of not guilty returned in criminal cases indicates that the prosecution did not prove every element of the charged crime beyond a reasonable doubt. This is a higher standard than is required for the introduction of other-acts evidence under Mil.R.Evid. 404(b). *See United States v. White, supra.* Furthermore, an act does not have to result in criminal liability or even constitute a crime in order to be admissible under Mil.R.Evid. 404(b). The relevance of the act, not its criminality, is important. The fact of the prior acquittal may diminish the probative value of the evidence, however, and should be considered by the military judge when determining whether "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Mil.R.Evid. 403. *See United States v. Sigal,* 572 F.2d 1320 (9th Cir. 1978); *United States v. Addington,* 471 F.2d 560 (10th Cir.1973); *United States v. Burkhart,* 458 F.2d 201 (10th Cir.1972); *United States v. Phillips,* 401 F.2d 301 (7th Cir.1968).

■ Even if we were to apply a collateral-estoppel analysis in this case, appellant would not prevail. Because only two of the four witnesses testified to prior acts upon which appellant had been acquitted, the testimony regarding the other two incidents of uncharged misconduct was not affected in any way by the doctrine of collateral estoppel. Further, appellant provided neither the military judge nor this Court with information by which it could be determined what factual issues were necessarily decided in his favor by the prior acquittals. Thus, the defense did not meet its burden of proving that the factfinder acquitted him because it resolved in his favor the issue that he sought to foreclose from consideration in the instant trial. As the military judge was the trier of fact, he may have rendered the issue moot as to findings by stating on the record: "The court is further of the opinion that the evidence establishes your guilt beyond a reasonable doubt, even without considering the testimony of the four women who complained of similar acts."

In any event, the prior acquittals were factored into the military judge's decision on admissibility. Also, the defense was permitted to bring out the fact of the acquittals in cross-examining the witnesses. We are convinced that the military judge did not abuse his discretion in admitting this evidence.

## IV

■ The Government made a motion *in limine* under Mil.R.Evid. 412 to prohibit the defense from eliciting evidence of the victim's past sexual behavior. When the military judge asked defense counsel his intentions in this regard, the following ensued:

CC: Your Honor, we intend to introduce evidence or on cross-examining allude to the fact that the victim in this case, Julie ..., slept with her boyfriend in a barracks room on the evening prior to the time this occurred, in his rack, under the same blankets.

MJ: So what?

CC: Your Honor, there is, in this case, of course, the issue, as there are many, many issues in this case, as to consent. We believe it will be probative of her testimony to show that she consented to sleep with a man in close proximity under the same covers, to show that although she may not be a person of bad sexual moral character, nevertheless, she is not pure as a fresh-driven snow.

MJ: That's the purpose of 412, Mr. Miner. Can you make it relevant, please, sir?

CC: No, Your Honor, I cannot.

MJ: Then it's not admissible.

The above exchange indicates quite clearly that defense counsel failed to even minimally demonstrate that the excluded evidence was relevant, material, and favorable to the defense. *See United States v. Elvine*, 16 M.J. 14 (C.M.A.1983); *United States v. Dorsey*, 16 M.J. 1 (C.M.A.1983). As stated in *United States v. Hollimon*, 16 M.J. 164, 166 (C.M.A.1983):

> Proof that a woman had sexual intercourse in her room with one male has little tendency to establish that she would also have intercourse willingly in her room with some other male—especially when, as here, there is no indication that ... [appellant's] encounter with the victim was under circumstances similar to those under which she had previously engaged in sexual activity with others.

Accordingly, the military judge properly granted the motion to exclude this evidence.

## V

■ The final issue concerns whether the offenses of rape and extortion are unreasonably multiplicious. There are elements in each offense which are not contained within the other, and neither offense is a lesser-included offense of the other. Paras. 199*a* and 206, Manual, *supra*. The extortion offense was complete upon communication of the threat to report Litteral with the requisite intent; the rape was accomplished by means of placing the victim in fear of bodily harm, *cf. United States v. Hollimon, supra*. We find the offenses to be separate for all purposes. *See United States v. Cox*, 18 M.J. 72 (C.M.A.1984).

The decision of the United States Navy-Marine Corps Court of Military Review is affirmed.

Judge SULLIVAN did not participate.

EVERETT, Chief Judge (concurring in part):

Collateral estoppel was not asserted at trial by the defense, when the Government offered evidence of appellant's prior uncharged misconduct pursuant to Mil.R. Evid. 404(b). Consequently, the record of trial does not contain detailed information about the earlier acquittals, so the record does not properly raise this issue. Moreover, the military judge stated specifically that he would have reached his findings of guilty even without the contested evidence of uncharged misconduct.

Certainly, as a matter of settled constitutional law, collateral estoppel prevents the Government from relitigating in a later criminal trial issues which previously have been decided in favor of a defendant. *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). However, as the principal opinion recognizes, there is divided authority as to whether the prosecution should be allowed to offer evidence of uncharged misconduct of which the accused has been acquitted in an earlier trial. Since the issue of collateral estoppel was first raised by the Court *ex mero motu* during oral argument and is not necessary for decision here, I shall reserve my views thereon until a later case.