UNITED STATES, Appellee,

v.

Specialist Lloyd W. MUNDELL, 235–17–4743, United States Army, Appellant.

ACMR 9300240.

U.S. Army Court of Military Review.

28 July 1994.

Reconsideration Denied Aug. 26, 1994.

For Appellant: David R. Dowell (argued); Captain Victor A. Tall, JAGC (on brief).

For Appellee: Captain Jane F. Polcen, JAGC (argued); Colonel Dayton M. Cramer, JAGC, Major James L. Pohl, JAGC, Major Kenneth T. Grant, JAGC (on brief).

Before GRAVELLE, JOHNSTON, and BAKER, Appellate Military Judges.

## OPINION OF THE COURT

BAKER, Judge:

The appellant was tried by a general court-martial consisting of officer members. Contrary to his pleas, he was found guilty of two specifications of non-consensual sodomy, one specification of indecent assault, and one specification of communicating indecent language in violation of Articles 125 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 925 and 934 (1988) [hereinafter UCMJ]. He was sentenced to a dishonorable discharge, confinement for twenty years, forfeiture of all pay and allowances, and reduction to Private E1. The convening authority reduced the amount of confinement to fifteen years but otherwise approved the sentence.

The appellant asserts, inter alia, that the military judge erred by allowing testimony concerning an allegation of misconduct already litigated at a prior court-martial at which the appellant was found not guilty. We conclude that the military judge did not err in allowing this testimony.

### I. Facts

The soldiers involved in this case were stationed in Bad Kreuznach and later, Dexheim, Germany. All were assigned to the same maintenance battalion, lived in military barracks, and were acquainted both on and off duty.

During an evening in late January or early February 1992, Specialist (SPC) S consumed between ten and twelve vodka and orange juice drinks at the Oasis, an informal "club" set up in a barracks room by its two occupants. He returned to his own room and, leaving the door unlocked because his roommates were still out, either fell asleep or passed out on his bunk. Sometime later, he awoke in the darkness. He sensed that someone was on top of him and that this person had taken his penis into his mouth. While SPC S was still trying to figure out what was happening, the person requested that he (SPC S) anally sodomize him. Hurriedly, SPC S got up and returned to the Oasis, saying nothing to the soldiers who were still there.

In July 1992, a second soldier, SPC B, consumed approximately fifteen whiskey and cola drinks at the Oasis and the Rheinlander Club. Subsequently, he returned to the Oasis and passed out or fell asleep there, as did several other soldiers. Much later, he awoke in the darkness feeling someone "sucking on his penis" and "day-old whiskers rubbing on his thigh." He shouted at the person, then observed the person open the door into a lighted hallway and exit the room.

In August 1992, a third soldier, SPC A, drank about thirteen beers, six in the barracks and the remainder at the Rheinlander Club. Afterwards, he returned to his barracks room and went to bed. At about 0330 he awoke in the darkness to find someone fondling his genitals. When he asked who was there a disguised voice replied "it's Kim." Like SPC B, he observed the person open the door into a lighted hallway and leave the room.

Specialist B and SPC A both identified the appellant as their assailant, basing their identifications on fleeting glimpses of, respectively, the assailant's profile and the assailant's haircut and build. SPC S testified that, although he did not see his assailant, he recognized the voice of the assailant as that of the appellant. All three of the soldiers testified that they had been drinking with other soldiers, to include the appellant. The appellant acknowledged that he had been present in the barracks and that he also had had a lot to drink, but flatly denied any misconduct.

The case against the appellant was buttressed with substantial circumstantial evidence—showing both that the assaults had taken place and that the appellant was the assailant. SPC S, for example, testified that he found the appellant's wallet and keys next

to his bunk the next morning. SPC A found the appellant's boots in his room. Significantly, a soldier newly assigned to the unit testified that he saw the appellant, naked, hurry from SPC A's room immediately before SPC A burst from the room shouting, "Where's Lloyd?" (The appellant countered that this new soldier later told him "it wasn't you.")

The government also introduced evidence of uncharged misconduct—testimony by SPC D that sometime in May 1991 he drank several beers and twenty shots of tequila in the appellant's presence, that the appellant invited SPC D to stay in his barracks room after SPC D could not unlock his barracks' door, that SPC D awoke to find the appellant sucking his penis, and that, because SPC D was too inebriated too resist, the appellant attempted to anally sodomize SPC D and to force SPC D to anally sodomize him.

The appellant's trial defense counsel strenuously objected to SPC D's testimony. In May 1991, the appellant had been acquitted by an earlier general court-martial, also composed of officer members, of various charges to include non-consensual sodomy with SPC D. After a timely motion in limine which clearly defined the issues, the military judge ruled that SPC D's testimony would be "highly probative as to ... whether or not [the charged offenses] occurred" and as to the "issue of the identification of the alleged attacker." He further stated that, in his view, the admission of the testimony would not be "unfairly prejudicial to the defense." After SPC D testified before the members, the military judge provided clear cautionary instructions:

> [The testimony of SPC D] is entered for a limited purpose. That being any tendency that the testimony may have or may tend to have bearing on the issues of whether or not in this particular case the incidents as described by the alleged victims actually occurred, or was the product of an alcohol delusion or memory perception distortion as a result of alcohol ingestion. And also to the issue of if it's believed that those incidents did occur who the perpetrator of those particular incidents was. This is the only use for which you may consider this

testimony. You may consider it for no other purpose. And furthermore, you may not consider this evidence as evidence that the accused is a bad person or has criminal tendencies or he, in fact, committed the offenses charged in this case.

Although the military judge had directed that the prior court-martial not be mentioned, SPC D inadvertently did so during his testimony. After denying a motion for mistrial based on this disclosure, the military judge instructed the court members that the appellant had been acquitted of all charges pertaining to SPC D at a prior court-martial.

## II. Acquittal Evidence

■ The Court of Military Appeals has determined that, in courts-martial, "collateral estoppel does not preclude use of otherwise admissible evidence even though it was previously introduced on charges of which an accused has been acquitted." *United States v. Hicks*, 24 M.J. 3, 8 (C.M.A.1987). "The questions to be decided are whether the evidence is relevant (Mil.R.Evid. 401) and whether the probative value of the proffered evidence is outweighed by its prejudicial effect (Mil.R.Evid. 403)." *Id.*

More recently, the United States Supreme Court reached the same conclusion. *Dowling v. United States*, 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990). In *Dowling*, identification of a bank robber who wore a ski mask and carried a small pistol was at issue. Testimony about a similarly masked and armed individual entering a private home was permitted on the issue of identification, despite a prior acquittal for burglary, because the burglary acquittal did not determine an ultimate issue in the bank robbery case. *Id.* at 348, 110 S.Ct. at 672. The Supreme Court noted that the jury in the robbery case "might reasonably conclude that [the robbery defendant] was the masked man who entered [the private home], even if it did not believe beyond a reasonable doubt that [the robbery defendant] committed the crimes charged at the first trial." *Id.* at 348–49, 110 S.Ct. at 672.

■ In the case at bar, only two of the victims actually saw the assailant and neither got a clear look at his face. Because SPC D

either could not or did not immediately put a halt to the advances made on him, he had a better opportunity to identify the individual making them. Therefore, the import of SPC D's testimony was not whether it established, beyond a reasonable doubt, that the appellant had committed a crime, but whether the testimony could reasonably support findings that (1) the sexual assaults were not just imagined and (2) the appellant was the assailant (identification). Thus, as in *Dowling,* there was no violation of the collateral-estoppel component of the Double Jeopardy Clause. Simply put, the offer of SPC D's testimony was not an attempt to relitigate an issue of ultimate fact.

■ We are also convinced that the military judge properly applied Mil.R.Evid. 404(b) and Mil.R.Evid. 403 before he admitted SPC D's testimony. The probativeness of that testimony was clear. The advances on SPC D and the assault on the three victims in this case involved the same modus operandi—sexual assault on a young soldier who falls asleep or passes out in the barracks after consuming a large quantity of alcohol. The potential for prejudice with this testimony is readily apparent. Timely and complete special instructions were, however, sufficient to avoid any risk that the court members would convict the appellant based on inferences drawn from the acquittal conduct. The instruction that the appellant was acquitted at his prior court-martial was also sufficient to resolve any issue over the inadvertent mention of that prior court-martial by SPC D. We note that a similar instruction was positively commented upon by the Supreme Court in *Dowling.*

### III. Other Assertions of Error

■ The assertion that the military judge unfairly prejudiced the appellant by continuously castigating counsel before the court members to hurry up and by cutting off counsel in the middle of presentation of evidence is totally without merit. Contrary to the appellate defense counsel's representations, we found nothing even close to "an unwarranted and prejudicial departure from the requisite standard of even-handedness and impartiality." *United States v. Thomas,* 18 M.J. 545, 547 (A.C.M.R.1984).

■ The appellant's assertion that the sentence imposed in this case was unduly severe is also without merit. The appellant was found guilty of repeated, serious misconduct which clearly had an adverse impact on, not only his victims, but the entire unit. We are confident that the court members based their sentence on appropriate considerations. The adjudged sentence is entirely appropriate for a sexual predator who preyed on fellow soldiers in the barracks and while they were most vulnerable.

We have reviewed the remaining assertions of error and find them to be without merit. We specifically find that the motion for severance of the specification of indecent assault from the remainder of the charges was properly denied. *See United States v. Curry,* 31 M.J. 359 (C.M.A.1990).

### IV. Decision

■ In the concluding paragraph of a lengthy brief, appellate defense counsel points out that the appellant's conviction involved apparently conflicting testimony. We agree. We do not, however, find that the testimony establishing the appellant's guilt was incredible. Rather, we come to the same conclusion as the members: that the victims were credible and the appellant was not. We have reviewed this case in accordance with the standard of review established by Article 66, UCMJ, 10 U.S.C. § 866, and are ourselves convinced that the findings of guilty are correct not only in law but in fact.

The findings of guilty and the sentence are affirmed.

Senior Judge GRAVELLE and Judge JOHNSTON concur.