*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————————

**UNITED STATES**
Appellee

**v.**

**Lawrence G. HUTCHINS III, Sergeant**
United States Marine Corps, Appellant

**No. 18-0234**

Crim. App. No. 200800393

Argued January 23, 2019—Decided May 29, 2019

Military Judges: Michael B. Richardson (arraignment at rehearing) and A. H. Henderson (rehearing)

For Appellant: *Lieutenant Colonel S. Babu Kaza*, USMCR (argued); *Captain Thomas R. Fricton*, USMC, and *Christopher Oprison*, Esq. (on brief); *Lieutenant Doug Ottenwess*, JAGC, USN.

For Appellee: *Lieutenant Kimberly Rios*, JAGC, USN (argued); *Colonel Mark K. Jamison*, USMC, *Major Kelli A. O'Neil*, USMC, and *Brian K. Keller*, Esq. (on brief).

Judge OHLSON delivered the opinion of the Court, in which Chief Judge STUCKY, and Judges RYAN, SPARKS, and MAGGS, joined.

———————————

Judge OHLSON delivered the opinion of the Court.

At a 2007 general court-martial, a panel convicted Appellant of a number of offenses related to the 2006 unlawful killing of an unknown Iraqi man in the Hamdaniyah area of Iraq. However, the panel also acquitted Appellant of a number of other offenses related to this same incident. Upon appellate review in 2013, this Court set aside the findings and sentence and authorized a rehearing. *United States v. Hutchins*, 72 M.J. 294, 300 (C.A.A.F. 2013). At the 2015 rehearing, Appellant was charged only with those offenses of which he was convicted at the first trial, and he was convicted of most of these charged offenses. The issue now before us is whether at the rehearing the military judge erred when he denied a defense motion to suppress evidence related to offenses of which Appellant had been acquitted at his first trial. We hold that the military judge did not err because the

doctrine of issue preclusion does not apply in this case, and therefore the military judge was permitted to examine whether the evidence was admissible under the Military Rules of Evidence (M.R.E.).

## I. Factual and Procedural Overview

### A. The First Trial

The following evidence was introduced at the 2007 court-martial:

> The appellant was assigned as squad leader for 1st Squad, 2nd Platoon, Kilo Company, 3rd Battalion, 5th Marines, assigned to Task Force Chromite, conducting counter-insurgency operations in the Hamdaniyah area of Iraq in April 2006. In the evening hours of 25 April 2006, the appellant led a combat patrol to conduct a deliberate ambush aimed at interdicting insurgent emplacement of improvised explosive devices (IEDs). The court-martial received testimony from several members of the squad that indicated the intended ambush mission morphed into a conspiracy to deliberately capture and kill [an Iraqi insurgent who was] a high value individual (HVI), believed to be a leader of the insurgency. The witnesses gave varying testimony as to the depth of their understanding of alternative targets, such as family members of the HVI or another random military-aged Iraqi male.

> Considerable effort and preparation went into the execution of this conspiracy. Tasks were accomplished by various Marines and their corpsman, including the theft of a shovel and AK-47 from an Iraqi dwelling to be used as props to manufacture a scene where it appeared that an armed insurgent was digging to emplace an IED. Some squad members advanced to the ambush site while others captured an unknown Iraqi man, bound and gagged him, and brought him to the would-be IED emplacement.

> The stage set, the squad informed higher headquarters by radio that they had come upon an insurgent planting an IED and received approval to engage. The squad opened fire, mortally wounding the man. The appellant approached the victim and fired multiple rifle rounds into the man's face at point blank range.

> The scene was then manipulated to appear
> consistent with the insurgent/IED story. The squad
> removed the bindings from the victim's hands and
> feet and positioned the victim's body with the
> shovel and AK-47 rifle they had stolen from local
> Iraqis. To simulate that the victim fired on the
> squad, the Marines fired the AK-47 rifle into the
> air and collected the discharged casings. When
> questioned about the action, the appellant, like
> other members of the squad, made false official
> statements, describing the situation as a legitimate
> ambush and a "good shoot." The death was brought
> to the appellant's battalion commander's attention
> by a local sheikh and the ensuing investigation led
> to the case before us.

*Hutchins*, 72 M.J. at 296 (citation omitted).

At trial, the Government proceeded under the theory that Appellant and his squad developed three alternative plans to "murder[] [a] man in cold blood" for the purpose of sending a message to the local Iraqi population. Plan A involved forcing the HVI from his house in the middle of the night, taking him to a previously created IED hole, killing him, and staging the scene to make it appear as if the HVI had been planting an IED. Plan B involved taking and killing one of the HVI's brothers if the HVI was not home. Plan C involved murdering any adult Iraqi man if the squad could not execute plan A or plan B. Trial counsel explained that the squad ultimately executed plan C. The defense, however, took the position that the command directed Appellant and his squad to "get" the HVI, that Appellant interpreted this directive to mean that his mission was to capture or kill the HVI, and that Appellant believed at the time that his squad had lawfully killed the correct person.

The members' general verdict convicted Appellant of four offenses: one specification of conspiracy to commit offenses under the UCMJ (larceny, false official statements, murder, and obstruction of justice), one specification of making a false official statement, one specification of unpremeditated murder of an unknown Iraqi man, and one specification of larceny, in violation of Articles 81, 107, 118, and 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 881, 907, 918, 921 (2006). The members found a number of overt acts to be part of the conspiracy, including: (1) four squad mem-

bers took an unknown Iraqi man to the IED hole; (2) three of these squad members forced the unknown Iraqi man to the ground and bound his hands and feet; and (3) after the squad members left the IED hole, five squad members, including Appellant, fired their weapons toward the unknown Iraqi man resulting in his death.

The members acquitted Appellant of seven other offenses: one specification of making false official statements, the greater offense of premeditated murder of an unknown Iraqi man, one specification of assault on an unknown Iraqi man by unlawfully forcing him to the ground and binding his hands and feet, one specification of housebreaking involving the dwelling of an unknown Iraqi man, one specification of kidnapping an unknown Iraqi man, and two specifications of obstruction of justice,[1] in violation of Articles 107, 118, 128, 130, and 134, UCMJ, 10 U.S.C. §§ 907, 918, 928, 930, 934 (2006). Additionally, for the conspiracy specification the members excepted "housebreaking" and "kidnapping" from the list of UCMJ offenses that were part of the conspiracy agreement, and they also excepted four charged overt acts including that: (1) four squad members walked from the HVI's house and entered an unknown Iraqi man's home; and (2) two squad members took an unknown Iraqi man from his home against his will.[2]

Based on the convictions, the members sentenced Appellant to a dishonorable discharge, confinement for fifteen years, a reprimand, and a reduction to E-1. The convening authority approved only so much of the sentence as provided for a dishonorable discharge, confinement for eleven years,

---

[1] In accordance with the military judge's instructions, (the members acquitted Appellant of the obstruction of justice specifications because they convicted him of the same conduct as part of the conspiracy.

[2] The other two overt acts excepted from the conspiracy specification were that: (1) Appellant made a false statement to a staff sergeant on April 26, 2006, relating to the circumstances of the unknown Iraqi man's death; and (2) Appellant made a false statement to the Naval Criminal Investigative Service (NCIS) about the unknown Iraqi man's death on May 8, 2006. These two overt acts do not play a direct role in this appeal.

and a reduction to E-1. In 2013 after extended appellate proceedings,[3] we set aside the findings of guilty due to a violation of Appellant's Fifth Amendment right against self-incrimination and we authorized a rehearing. *Hutchins*, 72 M.J. at 299–300.

### B. The Rehearing

Upon receipt of the record, the convening authority referred to a general court-martial for rehearing only those charges of which Appellant was convicted at the 2007 trial. None of the acquitted charges and none of the language excepted from the conspiracy specification at the first trial was referred to the rehearing.

The defense filed a motion to suppress "all evidence, allegations and inferences of conduct subject to 'not guilty' findings" at the first trial, arguing that the admission of this evidence violated the issue preclusion component of the Fifth Amendment's Double Jeopardy Clause. The military judge denied this motion at an Article 39(a), UCMJ, 10 U.S.C. § 839(a) (2012), session by concluding:

> There is no requirement to speculate on the rationale [of] the last panel of members. In fact, it's folly to try to do that. The real risk of confusing [the current panel members will arise] if we try to parse the facts as proposed by the defense counsel. Misconduct can violate more than one article of the UCMJ and the conduct [that the defense has sought to have suppressed is] not mutually exclusive to the charges of which the accused was acquitted.

Following this ruling, the Government relied on the same theory at the rehearing that it had used at the first trial, and it also relied on similar evidence. Specifically, trial counsel asserted that Appellant was the "mastermind" of "a

---

[3] Following the convening authority's action, Appellant's case proceeded as follows: (1) the United States Navy-Marine Corps Court of Criminal Appeals (CCA) ordered a fact-finding hearing in 2009; (2) the CCA set aside the findings and sentence in 2010 because of an improper severance of the attorney-client relationship; (3) this Court reversed the CCA's decision and remanded for further review in 2011; and (4) the CCA affirmed the findings and sentence in 2012.

perfect plan to commit a murder and send a message," which "his squad executed." Trial counsel went on to describe the "three-tiered plan": (1) plan A—capture and kill the Iraqi HVI; (2) plan B—capture and kill the HVI's brother; or (3) plan C—kill any Iraqi male they could find. Trial counsel explained that the squad abandoned plans A and B and instead executed plan C by grabbing an unknown Iraqi man who was sleeping in his house, dragging him to a nearby IED crater, and murdering him.

At the conclusion of the parties' presentation of evidence, the military judge instructed the members that:

> The burden is on the prosecution to prove each and every element of each offense beyond a reasonable doubt. Proof of one offense carries with it no inference that the accused is guilty of any other offense. *I remind you again that the accused was acquitted at a prior proceeding of the offenses of kidnapping, housebreaking, assault, obstruction of justice, premeditated murder, and false official statement on or about 8 May, as well as conspiracy to commit kidnapping and housebreaking. You may therefore consider evidence* that the accused may have been involved in plans or acts involving entering the alleged victim's home, moving him to another location, involvement in a shooting, and providing a statement to NCIS on or about 8 May *for the limited purpose of its tendency, if any, to prove a plan or design of the accused to commit the charged acts* .... [Y]ou may not conclude from this evidence that the accused is a bad person or has general criminal tendencies, and that he therefore committed the offenses charged.

(Emphases added.) The members returned a mixed verdict by acquitting Appellant of the sole specification of making a false official statement, excepting two overt acts from the conspiracy specification,[4] and convicting Appellant of the conspiracy, unpremeditated murder, and larceny specifications. The members sentenced Appellant to a bad-conduct

---

[4] The two excepted overt acts alleged that Appellant submitted a false written report about the unknown Iraqi man's death on April 28, 2006, and that a squad member made a false statement to NCIS about the unknown Iraqi man's death.

discharge and 2,627 days of confinement, and the convening authority approved the adjudged sentence.

### C. CCA Opinion

Appellant presented thirteen assignments of error to the CCA, including whether the military judge erred in denying the motion to suppress evidence relating to conduct of which he was acquitted. *United States v. Hutchins*, No. NMCCA 200800393, 2018 CCA LEXIS 31, at *2–3, 2018 WL 580178, at *1 (N-M. Ct. Crim. App. Jan. 29, 2018) (unpublished). The CCA concluded that the issue preclusion component of the Double Jeopardy Clause did not apply in this case because the evidence Appellant wanted excluded—i.e., evidence regarding the conspiracy to murder the HVI's brother or a random Iraqi male—did not constitute an issue of ultimate fact. *Id.* at *19–20, 2018 WL 580178 at *7. The CCA further concluded that the military judge did not abuse his discretion in admitting evidence involving "issue[s] of less than ultimate fact" of which Appellant had been acquitted at the first trial because this evidence was probative under M.R.E. 401 and M.R.E. 404(b) and was not unfairly prejudicial under M.R.E. 403. *Hutchins*, 2018 CCA LEXIS 31, at *20, *35–43, 2018 WL 580178, at *7, *12–14. Following a thorough review of the remaining issues, the CCA affirmed the findings and sentence. *Id.* at *202, 2018 WL 580178, at *68.

### D. Order Granting Review

We granted review to resolve the following issue:

> Whether the military judge erred when he denied the defense motion to suppress evidence of conduct for which Appellant had been acquitted at his first trial.

*United States v. Hutchins*, 78 M.J. 111 (C.A.A.F. 2018) (order granting review).

## II. Standard of Review

We review a military judge's ruling to admit or suppress evidence for an abuse of discretion. *United States v. Jerkins*, 77 M.J. 225, 228 (C.A.A.F. 2018) (admission of evidence); *United States v. Eppes*, 77 M.J. 339, 344 (C.A.A.F. 2018) (suppression of evidence). An abuse of discretion occurs when the military judge's factual findings are clearly erro-

neous, view of the law is erroneous, or decision is outside of the range of reasonable choices. *United States v. Bess*, 75 M.J. 70, 73 (C.A.A.F. 2016). The questions of "[w]hether a prosecution violates the Double Jeopardy Clause or [the doctrine of issue preclusion] are issues of law." *United States v. Brown*, 571 F.3d 492, 497 (5th Cir. 2009); *see also Schiro v. Farley*, 510 U.S. 222, 232 (1994) (stating that "[t]he preclusive effect of the jury's verdict … is a question of law"). We review these issues of law de novo. *See United States v. Paul*, 73 M.J. 274, 277 (C.A.A.F. 2014); *United States v. Cessa*, 861 F.3d 121, 140 (5th Cir. 2017).

### III. Legal Principles

The Double Jeopardy Clause of the Fifth Amendment states that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. In *Ashe v. Swenson*, the Supreme Court held that this clause "embodie[s]" the "extremely important principle" of issue preclusion.[5] 397 U.S. 436, 442–43 (1970).

Issue preclusion "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit."[6] *Id.* at 443. An issue of ultimate fact is an issue that was "necessary to the [initial] judgment." *Bobby v. Bies*, 556 U.S. 825, 835 (2009) (internal quotation marks omitted) (citation omitted). A "determination ranks as necessary … only when the final outcome hinge[d] on it." *Id.*

---

[5] The *Ashe* opinion uses the term "collateral estoppel," but in "modern usage" this term is now referred to as "issue preclusion." *Schiro*, 510 U.S. at 232; *see also Bravo-Fernandez v. United States*, 137 S. Ct. 352, 356 n.1 (2016) (describing issue preclusion as "the more descriptive term"). This opinion follows the modern usage.

[6] Issue preclusion is recognized under Rule for Courts-Martial (R.C.M.) 905(g). *See United States v. Harris*, 67 M.J. 611, 614 (A.F. Ct. Crim. App. 2009); *Manual for Courts-Martial, United States*, Analysis of Rules for Courts-Martial app. 21 at A21-53 (2016 ed.). Appellant appears to take the position that the right in R.C.M. 905(g) is no different than the issue preclusion component of the Double Jeopardy Clause. This opinion similarly treats the issue preclusion rule in R.C.M. 905(g) the same as the issue preclusion rule of the Fifth Amendment.

An appellant bears the burden "to demonstrate that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." *Dowling v. United States*, 493 U.S. 342, 350–51 (1990) (citations omitted). Courts examine "all the circumstances of" the first trial, including "the pleadings, evidence, charge, and other relevant matter," to determine "whether a rational [fact-finder] could have grounded its verdict upon an issue other than that which the [accused] seeks to foreclose from consideration." *Ashe*, 397 U.S. at 444 (internal quotation marks omitted) (citation omitted).

In *Currier v. Virginia*, the Supreme Court stated: "*Ashe* forbids a second trial only if to secure a conviction the prosecution must prevail on an issue the jury necessarily resolved in the defendant's favor in the first trial." 138 S. Ct. 2144, 2150 (2018). Thus, an appellant can prevail under the doctrine of issue preclusion only if he can satisfy both prongs of the following test: (1) the appellant first must demonstrate from evidence in the record that the panel's acquittal at the first court-martial necessarily determined an issue of ultimate fact in his favor; and (2) the appellant then must demonstrate that in order to obtain a conviction at the second court-martial, the government was required to prove beyond a reasonable doubt the existence of that same issue of ultimate fact. *See id.*; *Yeager v. United States*, 557 U.S. 110, 123 (2009).

The *Ashe* test "is a demanding one." *Currier*, 138 S. Ct. at 2150. The Supreme Court therefore has limited its application by, for instance, declining to extend "the [issue preclusion] component of the Double Jeopardy Clause to exclude in all circumstances … relevant and probative evidence that is otherwise admissible under the Rules of Evidence simply because it relates to alleged criminal conduct for which a defendant has been acquitted." *Dowling*, 493 U.S. at 348.

Consistent with Supreme Court precedent, we have held that a military judge may admit "otherwise admissible evidence even though it was previously introduced on charges of which an accused has been acquitted" as long as "the evidence is relevant" and "the probative value of the proffered evidence is [not] outweighed by its prejudicial effect." *United States v. Cuellar*, 27 M.J. 50, 54 (C.M.A.

1988) (internal quotation marks omitted) (quoting *United States v. Hicks*, 24 M.J. 3, 8 (C.M.A. 1987)). As the Supreme Court held in *Dowling*, "[A]n acquittal in a criminal case does not preclude the Government from relitigating an issue when it is presented in a subsequent action governed by a lower standard of proof" such as in an M.R.E. 404(b) context. 493 U.S. at 349; *see also Hicks*, 24 M.J. at 9. "The fact of the prior acquittal may diminish the probative value of the evidence, however, and should be considered by the military judge when" conducting the M.R.E. 403 analysis. *Hicks*, 24 M.J. at 9.

## IV. Analysis

### A. Issue Preclusion

Appellant argues that issue preclusion barred the Government at the rehearing from presenting the "narrative"[7] that he conspired to murder a random Iraqi male at the rehearing. As noted above, in order to prevail Appellant must meet both prongs of the issue preclusion test. Specifically, Appellant first must demonstrate from evidence in the record that the panel's acquittals at the first court-martial necessarily determined a specific issue of ultimate fact in his favor, and then he must demonstrate that in order to obtain a conviction at the rehearing the Government was required to prove beyond a reasonable doubt the existence of that same issue of ultimate fact.

There are two instances where Appellant has failed to meet his burden under the first prong of the issue preclusion test. First, Appellant's acquittals regarding the obstruction of justice specifications did not determine any issue of ultimate fact. The military judge instructed the members that they were required to acquit Appellant of these offenses if they convicted him of the conspiracy involving obstruction of

---

[7] We note that issue preclusion is concerned with issues of ultimate fact, not impressions, generalizations or, as Appellant characterizes it in his brief, a "narrative" of the underlying crime which is drawn from those facts. Brief for Appellant at 25, *United States v. Hutchins*, No. 18-0234 (C.A.A.F. Oct. 10, 2018); *see Cessa*, 861 F.3d at 140 ("The doctrine of [issue preclusion] as delineated in *Ashe* … deals with facts not theories." (alteration in original) (internal quotation marks omitted) (citation omitted)).

justice. Thus, no issue of ultimate *fact* can be deduced from these acquittals because the panel members were compelled to comply with the military judge's *legal* instructions.

Second, in regard to Appellant's acquittal for assault, there is an inconsistency between the members' not guilty finding for this substantive offense and the members' guilty finding for the conspiracy offense that involved overt acts that formed the basis for this same substantive offense. Given this inconsistency, no issue of ultimate fact can be identified. *Bravo-Fernandez*, 137 S. Ct. at 356–57 (explaining that where "verdicts are rationally irreconcilable, the acquittal gains no preclusive effect" (citing *United States v. Powell*, 469 U.S. 57, 68 (1984))).

Even if we were to assume arguendo that in certain instances Appellant has met the first prong of the issue preclusion test because he can identify issues of ultimate fact resolved in his favor arising from *other* acquittals at his first trial, he still cannot meet his burden under the second prong of the test.

To begin with, Appellant has not cited, and we cannot discern, any nexus between an issue of ultimate fact resulting from Appellant's acquittal on the false official statement specification at the first trial and any charges at the rehearing.

Next, the issue of ultimate fact that Appellant asserts was resolved in his favor at the first trial—that he was not involved in a conspiracy to murder a random Iraqi man—did not preclude the Government from proving at the rehearing the conspiracy, unpremeditated murder, and larceny offenses. It is important to note that Appellant was convicted of these three offenses at the first trial, thereby demonstrating that the Government's success at the rehearing did not hinge on the purported ultimate fact now cited by Appellant. *See United States v. Citron*, 853 F.2d 1055, 1059 (2d Cir. 1988) ("[A]n acquittal accompanied by a conviction on the count sought to be retried does not have a similar preclusive effect; the conviction casts doubt on whatever factual findings might otherwise be inferred from the related acquittal." (citations omitted)); *see also Bravo-Fernandez*, 137 S. Ct. at 366 & n.8 ("The split verdict does not impede the Govern-

ment from renewing the prosecution."). Moreover, this purported ultimate fact did not prevent the Government from obtaining convictions on the conspiracy, unpremeditated murder, and larceny offenses at the rehearing because no element of the offenses of conviction at the rehearing hinged on Appellant's involvement in a conspiracy to kill a random Iraqi male.[8] *See Currier*, 138 S. Ct. at 2150.

In regard to the 2007 acquittals for housebreaking, kidnapping, and conspiracy to commit housebreaking and kidnapping, Appellant appears to argue broadly that the issue of ultimate fact from these acquittals is that he had nothing to do whatsoever with any conduct related to these offenses, and therefore no evidence related to this conduct was admissible at the rehearing. However, we first note that these particular offenses were not charged at the rehearing. Moreover, we further note that Appellant has failed to meet his burden of demonstrating how any of the charges of which he was convicted at the rehearing required the Government to prove this purported issue of ultimate fact beyond a reasonable doubt. Stated differently, at the rehearing the Government could prove all of the elements of the offenses of which Appellant was convicted without having to prove beyond a reasonable doubt that Appellant committed any of the conduct related to these offenses of which Appellant was acquitted at the first trial. *Currier*, 138 S. Ct. at 2150; *Yeager*, 557 U.S. at 123.

And finally, Appellant's acquittal for *premeditated* murder of an unknown Iraqi man at the first trial did not preclude the Government from proving *unpremeditated* murder of an unknown Iraqi man at the rehearing. To begin with, we underscore the point that Appellant was actually *convicted* of unpremeditated murder of an unknown Iraqi man at the first trial. *See Citron*, 853 F.2d at 1059; *see also Bravo-Fernandez*, 137 S. Ct. at 366. Further, the acquittal for premeditated murder of an unknown Iraqi man at the first trial

---

[8] The conspiracy to commit murder charge did not specify the identity of the victim. Therefore, Appellant was not necessarily charged with a conspiracy to murder any random Iraqi male at the first trial. No issue of ultimate fact can be discerned under these circumstances.

at most established that Appellant did not act with premeditation in killing the unknown Iraqi man.[9] This fact was not necessary for proving the charged conspiracy to murder at the rehearing because Appellant's agreement to murder the HVI, and overt acts in furtherance of this agreement, would suffice to establish the conspiracy. *See United States v. Simpson*, 77 M.J. 279, 284 (C.A.A.F. 2018) (noting that a conspiracy only requires an agreement to commit an offense and an overt act).

Based on the foregoing analysis, we conclude that the issue preclusion component of the Fifth Amendment's Double Jeopardy Clause does not apply in this case.

### B. Admissibility of Evidence

Because issue preclusion is inapplicable in this case, the military judge properly examined whether the evidence related to the acquitted offenses was admissible at trial under M.R.E. 403 and M.R.E. 404(b). As noted above, the Supreme Court stated in *Dowling* that the holding in *Ashe* is not intended "to exclude in all circumstances … relevant and probative evidence that is otherwise admissible under the Rules of Evidence simply because it relates to alleged criminal conduct for which a defendant has been acquitted." 493 U.S. at 348. Rather, the proper way to decide this issue is to factor in the prior acquittal as part of the balancing test under M.R.E. 403. *See Hicks*, 24 M.J. at 9. Therefore, the evidence offered by the Government at the rehearing in the instant case was not barred as a matter of issue preclusion under *Ashe*. Accordingly, the military judge was correct when he determined that the admissibility of the Government's evidence should be decided using the framework of M.R.E. 404(b) and M.R.E. 403. Because Appellant does not meaningfully contest the military judge's application of those rules on their own terms, we need not address the military judge's specific analysis of those rules.

---

[9] Appellant's acquittal for premeditated murder at the first trial may also have been a result of lenity or member confusion about the military judge's instructions. Issue preclusion does not apply in these circumstances. *See Bravo-Fernandez*, 137 S. Ct. at 360.

**V. Conclusion**

We affirm the judgment of the United States Navy-Marine Corps Court of Criminal Appeals.